Fernando **MENDIOLA–SANCHEZ**;
Mario Mendiola–Araujo,
Petitioners,

v.

John **ASHCROFT**, Attorney
General, Respondent.

No. 02–72633.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2004.

Filed Aug. 27, 2004.

Helen A. Sklar, Law Office of Helen Sklar, Los Angeles, CA, for the petitioners.

Cindy Ferrier and Anthony W. Norwood, Assistant Attorneys General, U.S. Department of Justice, Washington, DC, for the respondent.

Before SCHROEDER, Chief Judge, TALLMAN, and CALLAHAN, Circuit Judges.

SCHROEDER, Chief Judge:

Fernando Mendiola–Sanchez Sr. and his son Mario Mendiola–Araujo are natives and citizens of Mexico who seek review of the Board of Immigration Appeals' ("BIA") denial of their application for suspension of deportation. The United States has been their home since 1983, but because the Mendiolas left the United States for a period of more than 90 days to care for elderly relatives, the BIA concluded that they were statutorily ineligible for relief. We must deny the petition for review because our current immigration law requires that result. *See* 8 U.S.C. § 1229b(d)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

The Mendiolas entered the United States on tourist visas in 1983 and have lived in the small town of Lebec, California for about twenty years. Several other members of the Mendiola family are U.S. citizens or legal permanent residents. In October 1993, Mr. Mendiola–Sanchez traveled to Mexico to visit his elderly parents. His trip was unexpectedly extended because both of his parents were injured during his visit and he stayed to help care for them. One month later, his then–10–year–old son joined him in Mexico. The Mendiolas returned to the United States on March 25, 1994.

On March 31, 1997, the Immigration and Naturalization Service ("INS") issued orders to show cause ("OSCs") against the Mendiolas. After a hearing, the Immigration Judge ("IJ") granted the applications for suspension of deportation. The IJ reasoned that because the Mendiolas had been present in the United States since 1983—a continuous period of more than seven years—before they traveled to Mexico in 1993–94, they were eligible for relief.

The INS appealed to the BIA, and the BIA reversed. The BIA held that the Mendiolas had failed to establish continuous physical presence for the seven years "immediately preceding" the issuance of the OSCs because their trip to Mexico was

for a period that exceeded 90 days. *See* Immigration and Nationality Act ("INA") § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994); INA § 240A(d)(2), 8 U.S.C. § 1229b(d)(2).

## STATUTORY BACKGROUND

Although Congress has frequently made changes to immigration law, the statutory schemes have consistently provided some relief from deportation or removal for persons who have lived in this country for many years, despite a brief return to their native country. In 1996, Congress extensively changed the immigration law when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Before IIRIRA, aliens were placed in deportation proceedings after being served with an OSC, and could seek relief by applying for "suspension of deportation." After IIRIRA, aliens are placed in removal proceedings after being served with a notice to appear, and can seek relief by applying for "cancellation of removal." *See Ram v. INS,* 243 F.3d 510, 513 (9th Cir.2001).

The law in effect when these petitioners made their temporary return to Mexico in 1993 provided for suspension of deportation for those who were continuously physically present in this country for seven years and allowed for "brief, casual, and innocent" absences from the United States.[1] IIRIRA became effective April 1, 1997, when these petitioners' proceedings were pending. It provides for cancellation of removal for those who have been continuously present for ten years, allowing for one absence of up to 90 days and absences in the aggregate of up to 180 days.[2]

Congress enacted transitional rules that instruct us to apply the pre-IIRIRA rules to cases that were pending when IIRIRA was enacted subject to limited exceptions. IIRIRA § 309(c)(1), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). The transitional rules that apply to these petitions instruct us to apply the law of suspension of deportation as it existed in 1996, except that we must apply IIRIRA's new rule about absences from the United States.[3]

---

1. Under the statute an alien is eligible for suspension of deportation if he "has been physically present in the United States for a continuous period of not less than seven years immediately preceding[the application for suspension of deportation], and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]" INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994). The statute also provides: "An alien shall not be considered to have failed to maintain continuous physical presence ... if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." INA § 244(b)(2), 8 U.S.C. § 1254(b)(2) (1994).

2. The statute provides in relevant part: "An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." INA § 240A(d)(2), 8 U.S.C. § 1229b(d)(2).

3. The "Transitional Rules with Regard to Suspension of Deportation," provide in relevant part: "In general.—Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act [8 U.S.C. § 1229b(d) ] (relating to continuous residence or physical presence) shall apply to orders to show cause ... issued before, on, or after the date of the enactment of this Act [Nov. 19, 1997]." IIRIRA § 309(c)(5)(A), *as amended by* the Nicaraguan Adjustment and Central American Relief Act, Pub.L. No. 105–100, tit. II, § 203(1), 111 Stat. 2193 (1997), *amended by* Pub.L. No. 105–139, 111 Stat. 2644 (1997).

The consistency with which Congress has provided a mechanism for relief to those who have been present in the United States for many years shows that Congress has recognized the harshness of forcing long-established residents to leave this country. As we will discuss below, however, the statutory limitations on the availability of this relief prevent the Mendiolas from qualifying for suspension of deportation even though their case is sympathetic and Congress may not have foreseen this harsh result when it enacted the relevant statutes.

## DISCUSSION

In their petition for review, the Mendiolas argue that IIRIRA's rule that an alien has failed to maintain continuous physical presence if he has left the United States for a period in excess of 90 days, INA § 240A(d)(2), 8 U.S.C. § 1229 B(d)(2) ("the 90/180 day rule"), does not apply when the alien requests suspension of deportation. The Mendiolas contend that because the 90/180 day rule is defined as a qualification for cancellation of removal under the new statute, and not for suspension of deportation under the old statute, the rule does not apply to their request for suspension of deportation. They argue that the transitional rule, which purports to apply the 90/180 rule to OSCs issued "before, on, or after" the date of IIRIRA's enactment, applies only when an alien is served with an OSC but is ultimately placed in removal proceedings pursuant to IIRIRA § 309(c)(2), codified in note following 8 U.S.C. § 1101, not to aliens like the petitioners who are in deportation proceedings under the old statute.

Similar arguments were rejected in *Ram*, 243 F.3d at 513–16. That case involved the "stop-time" rule, INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), which states that a period of continuous physical presence ends when deportation or removal proceedings commence. *See id.* at 5,13. In *Ram*, petitioners argued that the stop-time rule did not apply when an alien seeks suspension of deportation. They argued that the stop-time rule expressly references new procedures: a "notice to appear," aliens who are "removable," and 8 U.S.C. § 1229(a), which deals with cancellation of removal. *Id.* at 514. The petitioners also contended that the transitional rule applies only when an alien is ultimately placed in removal proceedings pursuant to IIRIRA § 309(c)(2). *Id.* This court disagreed and held that "IIRIRA section 309(c)(5)(A) generally applies the stop-time rule to transitional rule aliens whose deportations were initiated with the service of an OSC and who seek suspension of deportation." *Id.* at 516.

The core of the reasoning in *Ram* applies to the 90/180 day rule at issue here. We noted in *Ram* that the language of IIRIRA § 309(c)(5)(A) suggests that the stop-time rule should apply in suspension of deportation cases because it is entitled "Transitional Rules with Regard to Suspension of Deportation" and it specifically refers to OSCs. *Id.* at 514. The court noted that there is good reason for IIRIRA's permanent rules to use IIRIRA's new terminology, while the transitional rule references the pre-IIRIRA procedures. *Id.* The same rule, IIRIRA § 309(c)(5)(A), states that both the stop-time rule and the 90/180 day rule apply to transitional rule cases. The reasoning in *Ram* therefore appears to require that the 90/180 day rule apply to transitional rule aliens like petitioners, whose deportations were initiated with the service of an OSC and who seek suspension of deportation.

█ The most important difference between our case and *Ram* is that the legislative history, upon which we relied in *Ram*, expressly discussed only the stop-

time rule. 243 F.3d at 515–16. We are unable to find any similar legislative history that says that IIRIRA § 309(c)(5)(A) also applies the 90/180 day rule to aliens whose deportation proceedings were pending at the time of IIRIRA's enactment or gives a reason for applying this new rule to such aliens. We conclude, however, that it is very unlikely that Congress intended to apply only the stop-time rule retroactively, and not the 90/180 day rule. IIRIRA § 309(c)(5)(A) states that both provisions apply to aliens whose deportation proceedings were pending on the date of IIRIRA's enactment and there is no indication that the two provisions should be applied differently. We therefore follow *Ram* and hold that, like the stop-time rule, the 90/180 day rule applies generally to transitional rule aliens whose deportations were initiated with the service of an OSC and who seek suspension of deportation.

This conclusion is supported by the decisions of two of our sister circuits. *Tapia v. Ashcroft*, 351 F.3d 795, 799 (7th Cir. 2003) (applying the 90/180 day rule to a transition rule case); *Rivera–Jimenez v. INS*, 214 F.3d 1213, 1217–18 (10th Cir. 2000) (vacating a decision of the BIA that the alien's absence was not brief, casual, and innocent and remanding to the BIA to apply the 90/180 day rule).

 The Mendiolas also claim that they are not required to establish that they were continuously present in the United States for the seven years "immediately preceding" the date of their application for suspension of deportation. They argue that they qualify for relief because they were continuously present for seven years before their 1993 departures to Mexico. The IJ agreed, but the language of the statute requires continuous presence for "not less than seven years immediately preceding the date of such application [for

suspension of deportation]." INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994). As the BIA recognized, this means that the relevant seven year period is the period immediately preceding service of the OSC that prompts the application for suspension. We therefore conclude that the Mendiolas' departures for more than 90 days makes them ineligible for suspension of deportation.

Although we deny the petition for review because that is the proper conclusion under the relevant statutes, we pause in recognition of the injustice of this result. In this case the IJ found both petitioners to be persons of good moral character. She noted that neither had a criminal record and that the administrative record is filled with letters of support from members of their community. These letters describe the Mendiolas' efforts to improve their community through volunteer work, helping neighbors, and tutoring those learning English. Moreover, Mario entered the country as an infant and has spent his entire life here, with the exception of the five-month trip that now renders him deportable. Nothing in the record explains why so many of our government's limited resources have been used to pursue the deportation proceedings, to overturn the IJ's decision before the BIA, and to defend the BIA in this court.

This result is harmful to an entire family. The only reason the Mendiolas are ineligible for suspension of deportation is that they stayed too long in Mexico to help Mr. Mendiola–Sanchez's elderly parents recover from unexpected injuries. Mr. Mendiola–Sanchez's wife and daughter, who did not travel to Mexico for more than 90 days, were granted suspension of deportation and another of Mr. Mendiola–Sanchez's daughters is a U.S. citizen. These family members may stay in the

United States, but only at the cost of separation from Fernando and Mario.

Our decision need not end the Mendiolas' fight to stay in this country. The Mendiolas may be eligible for an administrative stay of deportation pursuant to 8 C.F.R. § 241.6 and we observe that even if the Mendiolas are deported, the Attorney General has discretion to allow them to apply for readmission before their period of inadmissibility expires.

This is not the first time a circuit court has decried the institution or maintenance of deportation or removal proceedings in inappropriate cases. *See, e.g., Munoz v. Ashcroft*, 339 F.3d 950, 958–59 (9th Cir. 2003); *Karapetian v. INS*, 162 F.3d 933, 937 (7th Cir.1998). Our immigration laws severely limit the power of courts, but when we are confronted with injustice we must urge those who do have discretion to exercise it wisely.

The petition for review is DENIED.