# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOAQUIN SINOTES-CRUZ,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

No. 04-70745

Agency No.
A91-427-266

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 9, 2005—San Francisco, California

Filed November 22, 2006

Before: Alex Kozinski and William A. Fletcher,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable H. Russel Holland, Senior District Judge for the District of Alaska, sitting by designation.

18711

**COUNSEL**

Kelly A. Evans, Jeffrey F. Barr, Snell & Wilmer, Las Vegas, Nevada, Joaquin Sinotes-Cruz, Pro Se, Tucson, Arizona, Lynn Marcus, University of Arizona, Tucson, Arizona, for the petitioner.

David V. Bernal, Andrew C. MacLachlan, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Jose Joaquin Sinotes-Cruz petitions for review from an order of removal. We hold that the government has introduced sufficient evidence to carry its burden of proof that Sinotes-Cruz is removable. We also hold, based on *INS v. St. Cyr*, 533 U.S. 289 (2001), that the permanent stop-time rule of § 240A(d)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(d)(1), may not be applied retroactively to prevent Sinotes-Cruz from fulfilling the seven-year continuous residence requirement of INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2), for cancellation of removal. Finally, we hold that Sinotes-Cruz does not need a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996), in order to be eligible for cancellation of removal. Thus we do not reach the question whether Sinotes-Cruz may simultaneously apply for waiver of deportation under § 212(c) and for cancellation of removal under § 1229b(a).

We therefore grant Sinotes-Cruz's petition and remand for further proceedings consistent with this opinion.

## I.　Background

Sinotes-Cruz petitions for review of the Board of Immigration Appeals' ("BIA") order requiring that he be removed to Mexico. He initially entered the United States without inspection in 1981. He was granted lawful temporary resident status in May 1988. He was granted lawful permanent resident status in June 1990.

On June 2, 1993, before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Sinotes-Cruz pled guilty to two counts of attempted aggravated assault in violation of Arizona Revised Statutes §§ 13-1001(C)(3), 13-1204(A)(2) and (B). Imposition of sentence was "suspended," and he was placed on four years probation. On August 6, 1997, after the enactment of IIRIRA, he pled guilty to "[c]hild or vulnerable adult abuse" in violation of Arizona Revised Statutes §§ 13-3623(C)(2) and 13-902(E). Sentence was again "suspended," and he was placed on three years probation.

On October 2, 2000, the former Immigration and Naturalization Service ("INS")[1] commenced removal proceedings against Sinotes-Cruz by serving him with a Notice to Appear. The notice charged removability on two grounds. First, it charged removability under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The two predicate convictions were either of the two attempted aggravated assault convictions in 1993, plus the "child abuse" conviction in 1997. Second, it

---

[1]The INS was abolished by the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, and the majority of its immigration enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement, part of the Department of Homeland Security. *Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003). We will refer to the government and INS interchangeably in this opinion.

charged removability under INA § 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i), for having been convicted of the crime of child abuse in 1997.

On February 13, 2001, the INS added a third charge of removability under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), for having been convicted of a crime involving moral turpitude, which was committed within five years of admission, and for which a sentence of one year or longer could have been imposed. The predicate conviction for this charge was either of the two attempted aggravated assault convictions in 1993. Sinotes-Cruz was admitted in May 1988, when he was granted temporary resident status. The date of the crimes underlying the two convictions was March 1993, just short of five years after Sinotes-Cruz's admission.

Although he had brief-writing and other assistance from a law school immigration clinic, Sinotes-Cruz appeared pro se during the proceedings in the Immigration Court. Sinotes-Cruz did not contest his removability in those proceedings. Instead, he filled out Form EOIR-42A, requesting cancellation of removal under § 1229b(a). He later asked, in the alternative, for simultaneous waiver of deportation under § 212(c) *and* cancellation of removal under § 1229b(a).

In a written decision, the Immigration Judge ("IJ") stated that Sinotes-Cruz "admitted the allegations and conceded removability under the charges." Based on Sinotes-Cruz's "admissions and concessions," the IJ held that he was removable under the two initial charges of removability. The IJ did not directly address the third charge. The IJ further held that Sinotes-Cruz was ineligible for cancellation of removal because under the stop-time rule of § 1229b(d)(1) either of his 1993 convictions stopped the accrual of the seven years of continuous residence required for cancellation of removal. *See* 8 U.S.C. § 1229b(d)(1). Because neither of the first two charges of removability would have triggered the operation of the stop-time rule under § 1229b(d)(1) in a manner detrimen-

tal to Sinotes-Cruz's accumulation of seven years of continuous presence, the IJ necessarily, but implicitly, also found that Sinotes-Cruz was removable under the third charge. Finally, the IJ held that Sinotes-Cruz could not apply simultaneously for a waiver of deportation under § 212(c) and cancellation of removal under § 1229b(a). In the IJ's view, this conclusion was necessary to support an order of removal because he believed that a waiver of deportation under § 212(c) would have allowed Sinotes-Cruz to escape the stop-time rule that would otherwise have stopped the accrual of his seven years of continuous residence. Based on these holdings, the IJ entered an order of removal allowing voluntary departure.

The BIA affirmed. It held that Sinotes-Cruz was removable, but it did not base its decision on Sinotes-Cruz's purported admissions; instead, it relied on electronically transmitted records of conviction introduced into evidence by the government. It further held that the IJ had properly applied the stop-time rule to the seven-year continuous residence requirement. Finally, it held that Sinotes-Cruz could not simultaneously apply for waiver of deportation under § 212(c) and cancellation of removal under § 1229b(a).

Sinotes-Cruz timely filed a petition for review in this court.

## II.   Standard of Review

When the BIA conducts an independent review of the IJ's findings we review the BIA's decision and not that of the IJ. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). To the extent the BIA incorporates the IJ's decision as its own, we treat the IJ's statements of reasons as the BIA's and review the IJ's decision. *Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir. 1996). We may review a decision on a point of law raised for the first time on appeal to the BIA if the BIA considers that point on the merits. *See Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir. 1985).

The BIA's interpretation and application of the immigration laws are generally entitled to deference. *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004). However, we are not obligated to accept an interpretation that is demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute. *Jahed v. INS*, 356 F.3d 991, 997 (9th Cir. 2004).

Whether a particular conviction is a removable offense is a question of law reviewed de novo. *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1151 (9th Cir. 2003) (as amended). Legal determinations regarding an alien's eligibility for cancellation of removal are reviewed de novo. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1145 (9th Cir. 2002). Whether application of IIRIRA is impermissibly retroactive presents a question of law that is reviewed de novo. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599-600 (9th Cir. 2002).

### III. Jurisdiction

The government has argued that under INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review the petition. However, this argument was made prior to the enactment of the REAL ID Act of 2005. Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). Section 106(a)(1)(A)(iii) of the Act amended 8 U.S.C. § 1252 to add a new subsection. That subsection provides: "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). We are presented with reviewable questions of law.

### IV. Discussion

We take the BIA's three holdings in turn — proof of removability, operation of the "stop-time" rule, and simulta-

neous applications for a waiver of deportation under § 212(c) and cancellation of removal under § 1229b(a).

## A.   Proof of Removability

**[1]** The government has the burden to prove "by clear and convincing evidence" that an alien is removable. INA § 240(c)(3)(A), 8 U.S.C. § 1229a(c)(3)(A). A determination of removability by an IJ or the BIA must be "based upon reasonable, substantial, and probative evidence." *Id.* To determine whether a prior conviction supports a removal order, we first apply the " 'categorical' approach, 'looking only to the statutory definition[ ] of the prior offense.' " *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (alteration in original) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the statutory definition of the offense of conviction is broader than the definition of the relevant removal offense, we apply a "modified" categorical approach in an attempt to determine the conduct of which the defendant was actually convicted. *Id.* Under the modified categorical approach, we "look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction" in order to determine the conduct for which the alien was convicted. *Id.*

**[2]** It is undisputed that the two 1993 convictions for attempted aggravated assault are categorically crimes of "moral turpitude" within the meaning of §§ 1227(a)(2)(A)(i) and (ii). *See* Ariz. Rev. Stat. § 13-1204(A)(2). However, the categorical approach is not available for the 1997 conviction. The federal statute requires that there have been "child abuse," § 1227(a)(2)(E)(i), and the Arizona statute under which Sinotes-Cruz was convicted covers abuse of both children and vulnerable adults. *See* Ariz. Rev. Stat. § 13-3623.

The government contends that it proved Sinotes-Cruz's 1993 and 1997 convictions based on documents purportedly FAXed to the INS by an Arizona official connected to the

Arizona court system. Sinotes-Cruz does not contend that the documents, if admissible as evidence, are insufficient to prove the crimes of moral turpitude under the categorical approach, or the crime of child abuse under the modified categorical approach. Rather, he contends, based on INA § 240(c)(3)(C), 8 U.S.C. § 1229a(c)(3)(C), and on INS regulations, that the documents are inadmissible.

Section 1229a(c)(3)(C) provides:

> (C) Electronic records
>
> > In any proceeding under this chapter, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is—
> >
> > > (i) certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository, and
> > >
> > > (ii) certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.
> >
> > A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

The corresponding regulation tracks the provision in almost exactly the same words as the statute. *See* 8 C.F.R. § 3.41(c) (2000) (renumbered at 8 C.F.R. § 1003.41 (2003)).

**[3]** It is uncontested that the electronically transmitted records of conviction did not fully comply with the terms of the statute and regulation. There is certification by an INS official, but there is no certification by a state official.

Four separate records were transmitted, in two batches, by FAX to the INS. The INS placed stamps on the last page of each of the two batches. The first batch, transmitted on September 21, 2000, contained the judgments of conviction for the 1993 and 1997 crimes. The stamp was placed on the last page of the judgment of conviction for the 1997 crime. It reads:

USINS

I HEREBY CERTIFY that the foregoing documents were received by me, Brian P. McCarthy, by electronic transmission from the state of AZ record repository of the Court of _____ record depository.

9-21-00                    [signature]   IA
date                       Signature/Title

(Underlining indicates blanks where information was inserted in handwriting, or could have been inserted.) Upside-down at the bottom of each FAXed page is the notation "9-21-00 THU 13:03 FAX 7403251 LEGALRECORD," followed by sequential page numbers.

The second batch, transmitted on November 14, 2000, contained the indictment and the order of discharge from probation for the 1997 crime. The stamp was placed on the discharge from probation. It reads:

USINS

I HEREBY CERTIFY that the foregoing documents were received by me, Brian P. McCarthy, by elec-

tronic transmission from the state of <u>AZ</u> record repository of the Court of <u>Pima County</u> record depository.

<u>11-14-00</u>       [signature]   IA
date              Signature/Title

(Underlining indicates blanks where information was inserted in handwriting.) Upside-down at the bottom of each FAXed page is the notation "11-14-00 TUE 13:02 FAX 7403251 LEGALRECORD," followed by sequential page numbers.

Sinotes-Cruz contended before the BIA, and contends in this court, that the failure to comply fully with the terms of the statute and implementing regulation rendered the FAXed records of conviction inadmissible. The BIA held that the documents were admissible, writing only the following: "[C]ontrary to the respondent's argument, the conviction records were properly certified *by an immigration official*[.]" (Emphasis added.) Unfortunately, the BIA did not respond to Sinotes-Cruz's argument — which was that the records had not been properly certified *by a state official*. We do not feel justified in giving *Chevron* deference to the BIA's interpretation of the statute in this circumstance, for the BIA did not address Sinotes-Cruz's actual objection to the records' admissibility under the statute. *See Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

**[4]** Nonetheless, even without the assistance of *Chevron* deference, we hold that it was not error for the BIA to rely on the records. As we read § 1229a(c)(3)(C), it operates as a safe-harbor. It only tells us the conditions under which an electronically transmitted document *must* be admitted. *See id.* (any record of conviction . . . *shall be admissible* as evidence . . . if" (emphasis added)). That is, it establishes the maximum standard for authentication of electronically transmitted records of conviction, but it does not establish a minimum standard. The government has long been required to provide

some authentication of records of conviction introduced in immigration proceedings. *See Chew v. Boyd*, 309 F.2d 857, 866-67 (9th Cir. 1962) (holding unauthenticated record inadmissible). But § 1229a(c)(3)(C), passed as part of IIRIRA, has done nothing to alter our normal rule that the documents *may* be authenticated under INS regulations, or by "any procedure that comports with common law rules of evidence." *Iran v. INS*, 656 F.2d 469, 472 n.8 (9th Cir. 1981) (as amended). The guiding principle is that proper authentication requires some sort of proof that the document is what it purports to be. *Id.* at 473.

**[5]** Here, the two INS stamps at the end of the records clearly indicate that the documents were received by an INS official on the dates specified, and the records on their face give every indication of being official Arizona court records. Further, the dates given in the upside-down FAX notations on the bottom of the pages indicate that the documents were FAXed on the same day they were stamped as received by the INS, and the term "LEGALRECORDS" in the same notations strongly suggests that the records were FAXed from an Arizona legal records depository. Finally, Sinotes-Cruz made no objection in the Immigration Court to the admission of the records. Under these circumstances, we do not hesitate in holding that the BIA was justified in relying on the records in concluding that Sinotes-Cruz was convicted of two crimes involving moral turpitude (either of the 1993 convictions and the 1997 conviction), one crime involving child abuse (the 1997 conviction), and one crime of moral turpitude committed within five years of admission (either of the 1993 convictions). We therefore uphold the BIA's determination that Sinotes-Cruz was removable based on these convictions.

## B.   Operation of the Stop-Time Rule

A lawful permanent resident alien must satisfy three requirements to be eligible for cancellation of removal. They are set forth in § 1229b(a):

(a) Cancellation of removal for certain permanent residents

    The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien —

    (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

    (2) has resided in the United States continuously for 7 years after having been admitted in any status, and

    (3) has not been convicted of any aggravated felony.

It is undisputed that Sinotes-Cruz has not been convicted of an aggravated felony within the meaning of § 1229b(a)(3), so the third requirement is not at issue.

    **[6]** The permanent stop-time rule, enacted as part of IIRIRA in 1996, provides that "continuous residence" shall be deemed to end upon either service of a Notice to Appear (part A) or commission of certain crimes (part B). Specifically, § 1229b(d)(1) provides:

    For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served with a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under

section 1227(a)(2) or 1227(a)(4) of this title, which-
ever is earliest.

**[7]** Section 1229b(d)(1) does not apply to the five-year
requirement of § 1229b(a)(1) because it stops only the accrual
of "any period of continuous residence or continuous physical
presence." The five-year requirement, by its terms, does not
require continuous residence or continuous physical presence.
Rather, it requires only lawful admission as a permanent resi-
dent.

Section 1229b(d)(1) does, however, apply to the seven-year
requirement of § 1229b(a)(2). Part A of § 1229b(d)(1) has no
effect on Sinotes-Cruz's case because he was served with his
notice to appear long after he fulfilled the seven-year require-
ment. Only part B, which stops the accrual of time upon the
commission of certain crimes, can possibly affect Sinotes-
Cruz's case.

**[8]** Sinotes-Cruz was first lawfully admitted "in any status"
in May 1988, when he was granted temporary resident status.
His seven-year period under § 1229b(a)(2) began to run at
that time. Either of his two 1993 crimes of attempted aggra-
vated assault qualifies as an offense under § 1227(a)(2). If the
permanent stop-time rule contained in part B of § 1229b(d)(1)
may be retroactively applied to Sinotes-Cruz, it stops the
accrual of his seven years of continuous residence after only
five years. The question before us is whether part B applies
retroactively to Sinotes-Cruz, who pled guilty to the 1993
crimes.

The BIA held in *In re Perez*, 22 I. & N. Dec. 689 (BIA
1999), that part B of § 1229b(d)(1) applies retroactively to
crimes committed before the enactment of IIRIRA, without
differentiating between convictions obtained after trial or pur-
suant to guilty pleas. But *Perez* was decided before the
Supreme Court held in *INS v. St. Cyr*, 533 U.S. 289, 326
(2001), that IIRIRA's elimination of relief under § 212(c) did

not operate retroactively against aliens who, before the enactment of IIRIRA, had pled guilty to a deportable crime.

In this case, the BIA held in a short, unpublished one-member per curiam order that part B applies retroactively to Sinotes-Cruz's 1993 conviction. It wrote only, "The Immigration Judge correctly found that the 'stop-time' rule applies to the respondent notwithstanding the fact that he pled guilty to aggravated assault in 1993, prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act." For the reasons that follow, we disagree with the BIA's conclusion.

**[9]** To determine whether application of part B of § 1229b(d)(1) to the seven-year continuous residence requirement of § 1229b(a)(2) would be impermissibly retroactive in Sinotes-Cruz's case, we look to the two-part analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). The first step is to determine whether Congress has given a clear indication that the law is to be applied retroactively. *St. Cyr*, 533 U.S. at 316. The standard for finding such a clear indication is a "demanding one." *Id.* The statutory language must be so clear that it "could sustain only one interpretation." *Id.* at 317 (quoting *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997)); *see also Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2428 (2006). "Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, *Landgraf*, 511 U.S., at 264, . . . there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve." *St. Cyr*, 533 U.S. at 320 n.45. If the language is "ambiguous with respect to retroactive application," we proceed to the second step of *Landgraf*. *See id.* at 320.

**[10]** At the second step, we determine whether the statute would have an impermissible retroactive effect. "A retroactive effect, as defined in *Landgraf*, is one that 'would impair rights a party possessed when he acted, increase a party's liability

for past conduct, or impose new duties with respect to trans-actions already completed.' " *Jimenez-Angeles*, 291 F.3d at 601 (quoting *Landgraf*, 511 U.S. at 280). "The inquiry into whether a statute operates retroactively demands a common-sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' " *St. Cyr*, 533 U.S. at 321 (quoting *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (quoting *Landgraf*, 511 U.S. at 270)) (internal quotation marks omitted).

**[11]** Applying *Landgraf*'s first step, we hold that part B of § 1229b(d)(1) is ambiguous with respect to its retroactivity. As the Court pointed out in *St. Cyr*, numerous other provi-sions of IIRIRA expressly state that they have retroactive application. 533 U.S. at 318-20, 320 n.43. For example, IIRIRA § 321(b), 8 U.S.C. § 1101(a)(43), states that IIRIRA's new definition of "aggravated felony" applies to "convic-tion[s] . . . entered before, on, or after" the enactment of IIRIRA. *Id.* at 319-20. By contrast, the text of § 1229b(d)(1) (including part B) says nothing whatsoever about retroactive application. Basing our analysis solely on the text of § 1229b(d)(1), we would have no trouble concluding that it is ambiguous with respect to its retroactive application.

**[12]** We note, however, that IIRIRA § 309(c)(5), the transi-tional stop-time rule analogous to the permanent stop-time rule of § 1229b(d)(1), is explicit with respect to retroactivity. In relevant part, it provides:

> [P]aragraphs (1) and (2) of 240A(d) of the Immigra-tion and Nationality Act [18 U.S.C. § 1229b(d)(1) and (2)] (relating to continuous residence or physical presence) shall apply to orders to show cause . . . issued before, on, or after the date of the enactment of this Act.

As originally adopted, this transitional rule referred to "no-tices to appear" ("NTAs") rather than to "orders to show

cause" ("OSCs"). *See* IIRIRA § 309(c)(5), Pub. L. No. 104-208, 110 Stat. 3009 (1996). But this reference made no sense because NTAs were used to initiate proceedings under the newly enacted IIRIRA, whereas the transitional rule was designed to deal with proceedings initiated under the prior statute. *Ram v. INS*, 243 F.3d 510, 515 (9th Cir. 2001). Proceedings under the prior statute were initiated by OSCs. The original text of § 309(c)(5) was amended soon thereafter by Section 203(f) of the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), which replaced "notices to appear" with "orders to show cause." NACARA § 203(f), Pub. L. No. 105-100, 111 Stat. 2160 (1997).

We have interpreted the transitional stop-time rule in two cases. First, in *Ram*, we held that, in proceedings covered by the transitional rule, part A of § 1229b(d)(1) applies retroactively. 243 F.3d at 518. Second, in *Mendiola-Sanchez v. Ashcroft*, 381 F.3d 937, 941 (9th Cir. 2004), we held that, in proceedings covered by the transitional rule, the 90/180-day rule of § 1229b(d)(2) applies retroactively. *See* § 1229b(d)(2) ("An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.").

We have never decided whether, in proceedings covered by the transitional rule, part B of the § 1229b(d)(1) applies retroactively. That question is not directly presented by this case, for Sinotes-Cruz is covered by the permanent stop-time rule of § 1229b(d)(1) rather than by the transitional rule. But the question is indirectly relevant to our decision here because in *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 939-41 (9th Cir. 2005) (per curiam), we applied our interpretation of the transitional rule in *Mendiola-Sanchez* to the permanent rule under § 1229b(d)(2). We wrote that "[a]lthough the transitional rules do not directly govern Garcia-Ramirez's case, it would be incongruous to hold that Congress intended to apply the

90/180-day rule to petitioners governed by those rules, but not to Garcia-Ramirez." *Id.* at 940. Under this line of reasoning, if we were to conclude that (a) the transitional stop-time rule clearly indicates that part B of § 1229b(d)(1) applies retroactively to crimes in all circumstances, and that (b) it would be "incongruous" not to apply our interpretation of the transitional rule to the permanent rule, the necessary result would be to conclude that the permanent rule applies retroactively to Sinotes-Cruz's case.

However, we do not agree with conclusion (a), above. For two reasons, we conclude that the transitional rule does not clearly indicate that it is to be applied retroactively to part B of § 1229b(d)(1) in all circumstances.

**[13]** First, the text of the transitional rule is somewhat opaque. It does not make clear that the rule is intended to apply to part B of § 1229b(d)(1) at all, whether retroactively or otherwise. The text of the transitional rule specifies that "[§§ 1229b(d)(1) and (2)] (relating to continuous residence or physical presence) shall apply to orders to show cause . . . issued before, on, or after the date of the enactment of this Act." IIRIRA § 309(c)(5).

One possible reading of the transitional rule is that it applies only to those portions of §§ 1229b(d)(1) and (2) that are triggered by the issuance of an OSC. Under this reading, part A of § 1229b(d)(1) operates retroactively by stopping the accrual of time as of the time of the issuance of the OSC. However, because the issuance of an OSC has no consequence for the operation of either part B of § 1229b(d)(1) or § 1229b(d)(2), neither of these provisions has retroactive effect. A problem with this reading is that it makes superfluous the transitional rule's reference to § 1229b(d)(2). Another feature of this reading — which may be regarded as a problem by some — is that it gives a very limited retroactive effect to the transitional rule, effectively limiting its retroactive effect to cases in which OSCs were issued during the

time between the passage of the Act on September 30, 1996, and its effective date of April 1, 1997. *See* IIRIRA § 309(a).

Another possible reading of the text is that the transitional rule applies to proceedings initiated by OSCs. Under this reading, both parts of § 1229b(d)(1), as well as § 1229b(d)(2), operate retrospectively. The problem with this reading is that the text does not quite say this. The text says only that § 1229(d)(1) and (d)(2) "shall apply to orders to show cause[.]" It does not say that § 1229b(d)(1) and (2) "shall apply to *proceedings initiated by* orders to show cause." Without acknowledging this interpretive problem, we adopted this second interpretation of the transitional rule in *Ram* and *Mendiola-Sanchez*, applying the rule to proceedings initiated by OCSs, both as to part A of § 1229b(d)(1) (*Ram*) and § 1229b(d)(2) (*Mendiola-Sanchez*). (The First Circuit has done so, in addition, as to part B of § 1229b(d)(1). *See Peralta v. Gonzales*, 441 F.3d 23, 29-32 (1st Cir. 2006).) Given our decisions in *Ram* and *Mendiola-Sanchez*, it is obvious that we have concluded that this second interpretation of the rule is the better reading; but this does not mean that its text poses no interpretive problems.

Second, the logic behind *Ram* and *Mendiola-Sanchez* does not require the conclusion that, in a case covered by the transitional rule, part B of § 1229b(d)(1) should be retroactively applied to a criminal conviction based on a guilty plea. In *Ram*, petitioners entered the United States in 1987 and then overstayed their visas. They were served with an OSC in 1988. 243 F.3d at 512. Their proceeding was still pending as of the passage of IIRIRA. Under pre-IIRIRA law, continuous presence could be accrued toward the then-applicable seven-year requirement up until the time of a petitioner's application for suspension of deportation, irrespective of the time of issuance of an OSC. *Id.* at 513. If the old rule had been applied, petitioners would have satisfied the then-applicable seven-year requirement in 1994. We interpreted the transitional rule

to apply retroactively, holding that the issuance of the OSC cut off the accrual of time as of 1988. *Id.* at 516-17.

In *Mendiola-Sanchez*, petitioners entered the United States in 1983. 381 F.3d at 938. In 1993, petitioners went to Mexico to visit elderly parents. Because of injuries suffered by the parents during the visit, petitioners stayed in Mexico for more than 90 days. *Id.* Under pre-IIRIRA law, such an absence would almost certainly have been considered "brief, casual, and innocent," and would not have interrupted the continuous presence in the United States. *See id.* Under the transitional rule, the period was interrupted by any absence from the United States for more than 90 days. *See* § 1229b(d)(2) (90/180-day rule). If the old rule had been applied, the petitioners would have satisfied the requisite period of continuous presence. We interpreted the transitional rule retroactively, holding that petitioners' absence interrupted their continuous presence in the United States. *Mendiola-Sanchez*, 381 F.3d at 941.

But in *Ram* and *Mendiola-Sanchez*, the government's and the petitioners' actions were undertaken independently of any reciprocal action by the other party. In *Ram*, the government simply served the OSC on the petitioners. In *Mendiola-Sanchez*, the petitioners simply went to Mexico and stayed there for more than 90 days. By contrast, in this case, Sinotes-Cruz's 1993 criminal conviction came as a result of a guilty plea. "In exchange for some perceived benefit, [Sinotes-Cruz] waive[d] several of [his] constitutional rights (including the right to a trial) and grant[ed] the government numerous 'tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.' " *St. Cyr*, 533 U.S. at 322 (quoting *Newton v. Rumery*, 480 U.S. 386, 393 n.3 (1987)); *cf. Jimenez-Angeles*, 291 F.3d at 602.

**[14]** We therefore hold that the permanent stop-clock rule contained in part B of § 1229b(d)(1) is ambiguous, within the

meaning of *Landgraf*, with respect to its retroactive application to a conviction obtained pursuant to a guilty plea.

We now proceed to step two of *Landgraf*. The precise question is whether part B of § 1229b(d)(1) should be applied retroactively to a conviction, obtained pursuant to a guilty plea, for a crime that did not render an alien deportable at the time of the plea. The key to our analysis is the Supreme Court's holding in *St. Cyr*. Before the enactment of IIRIRA, St. Cyr pled guilty to a deportable offense. *St. Cyr*, 533 U.S. at 292-93. Under the law at the time of his guilty plea, St. Cyr was eligible to apply for waiver of deportation under § 212(c). *Id.* at 293, 314-15. However, IIRIRA eliminated waiver of deportation under § 212(c) and replaced it with the relatively more stringent cancellation of removal. *Id.* at 297. The Court held that in pleading guilty, thereby giving up his valuable right to go to trial, St. Cyr did so in reliance on the availability of a § 212(c) waiver. *Id.* at 321-22.

**[15]** *St. Cyr* involved a defendant who pled guilty to a crime that made him deportable under then-existing law, thereby directly triggering the necessity of § 212(c) relief. *Id.* at 292-93, 314-15. We have extended the rationale of *St. Cyr* to defendants who have pled guilty to less serious crimes than St. Cyr's — crimes that did not make them deportable at the time of their plea and that therefore did not trigger, at the time of the plea, the necessity for § 212(c) relief. In *United States v. Leon-Paz*, 340 F.3d 1003, 1004 (9th Cir. 2003), Leon-Paz had pled guilty to burglary and was sentenced to four years in prison in 1995. At the time of his plea, his conviction and sentence did not render him deportable, and there was therefore no necessity for § 212(c) relief. *Id.* at 1005. After the enactment of IIRIRA, however, his burglary was reclassified as an "aggravated felony," and he was ordered removed by an IJ based on that crime. *Id.* at 1004. After the IJ advised him that he was not eligible for relief from removal, he did not appeal the order. *Id.* In a later prosecution for unlawful reentry, we were called upon to determine "whether the IJ's

advice was correct." *Id.* at 1005. We held that "it was not." *Id.*

We wrote that at the time of his plea, Leon-Paz had a "double protection." *Id.* When he pled guilty, Leon-Paz

> had two bulwarks to protect himself against attacks on his residence in this country. The first was the fact that he had pled to a crime that was below the aggravated felony threshold, and the second was § 212(c) itself in case the definition of aggravated felony changed as it often had and has.

*Id.* at 1006. The new definition of aggravated felony in IIRIRA was expressly made retroactive, but the elimination of § 212(c) relief was not. Relying on *St. Cyr*, we held that § 212(c) relief was available to Leon-Paz. *Id.*

Sinotes-Cruz is in a position analogous to that of Leon-Paz. In 1993, he pled guilty to two counts of attempted aggravated assault under Arizona law, and was given a suspended sentence and four years probation. It is undisputed that at the time of his plea, his conviction did not render him deportable. *See* INA § 241(a)(2)(A)(i), 8 U.S.C. § 1251(a)(2)(A)(i) (1993). IIRIRA, however, reclassified his crime, making him removable under § 1227(a)(2)(A)(i) for having been convicted of a crime involving moral turpitude, committed within five years of admission, for which a sentence of a year or longer could have been imposed. *See* 8 U.S.C. § 1251(a)(2)(A)(i) (recodified in 8 U.S.C. § 1227(a)(2)(A)(i)). The parties do not dispute that the retroactive application of the reclassification of his crime under § 1227(a)(2)(A)(i) applies to Sinotes-Cruz, so there is no question that Sinotes-Cruz is removable, just as Leon-Paz was made removable by the retroactive reclassification of his aggravated felony under § 1101(a)(43).

**[16]** Also like Leon-Paz, Sinotes-Cruz can seek relief from removal if a different provision of IIRIRA has not been made

retroactive. In Leon-Paz's case, the provision at issue was cancellation of removal, which repealed § 212(c). In Sinotes-Cruz's case, the provision at issue was the stop-time rule of part B of § 1229b(d)(1), which stops accrual of the seven years of continuous residence. In both cases, the repeal of § 212(c) and the application of the permanent stop-time rule to the seven-year period, respectively, were unforeseeable at the time of the guilty pleas. In both cases, Leon-Paz and Sinotes-Cruz had, in pleading guilty, given up valuable rights, including the right to go to trial, in the justifiable expectation that their pleas would have no effect on their immigration status. Further, in both cases, they were eligible for discretionary relief when IIRIRA became effective. Finally, the retroactive application of the repeal of § 212(c) and part B of the permanent stop-time rule of § 1229b(d)(1) would have had serious adverse consequences for both Leon-Paz and Sinotes-Cruz. We therefore hold, based on *St. Cyr*, that part B of the stop-time rule of § 1229b(d)(1) does not apply retroactively to the seven-year continuous residence requirement of § 1229b(a)(2) for an alien who pled guilty before the enactment of IIRIRA and was eligible for discretionary relief at the time IIRIRA became effective. We note that the only other published opinion specifically addressing and analyzing this issue at step two of *Landgraf* has come to the same conclusion. *See Henry v. Ashcroft*, 175 F. Supp. 2d 688, 692-96 (S.D.N.Y. 2001). *But see Hernandez v. Gonzales*, 437 F.3d 341 (3d Cir. 2006) (contra without analysis).

The government is undoubtedly aware of our decision in *Toro-Romero v. Ashcroft*, 382 F.3d 930 (9th Cir. 2004), for that case was cited by Sinotes-Cruz in support of his argument that we have jurisdiction over his petition. Yet the government nowhere cites or relies on *Toro-Romero* in support of its argument that part B of § 1229b(d)(1) operates retroactively. Toro-Romero was a lawful permanent resident alien who pled guilty in 1989 to burglary under California law. He took a day trip to Mexico in 1997. *Id.* at 931. At the border upon his return, Toro-Romero used another person's birth certificate

and claimed to be a United States citizen because, he later claimed, he had lost his permanent legal resident card. The border guards determined that he was not who he purported to be. *Id.* Toro-Romero was later served with a Notice to Appear, charging him with being inadmissible on two grounds: (1) that he had been convicted of a crime involving moral turpitude within the meaning of INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and (2) that he had falsely represented himself as a United States citizen for a purpose or benefit under federal law in violation of INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii). *Id.*

The BIA affirmed the IJ's holding that Toro-Romero was inadmissible on the sole ground of his false representation of citizenship. *Id.* at 932-33. It did not reach the question whether he had been convicted of a crime involving moral turpitude. *Id.* at 933. We held for two reasons that the BIA should have reached the question whether Toro-Romero had committed a crime of moral turpitude. One of those reasons was that if he had committed such a crime he might not have been qualified for cancellation of removal under the criteria of §§ 1229b(a)(1) (the five-year period) and (a)(2) (the seven-year period). *Id.* at 937. We assumed, incorrectly, that part B of the permanent stop-time rule of § 1229b(d)(1) applies to the five-year period of § 1229b(a)(1), and we assumed, without discussion, that part B applies retroactively to both the five- and seven-year periods of §§ 1229b(a)(1) and (a)(2). *Id.*; *cf. Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1021 (9th Cir. 2005) (relying on *Toro-Romero* to apply part B of § 1229b(d)(1) to the seven-year period of § 1229b(a)(2) where the alien pled guilty to a removable crime *after* the enactment of IIRIRA). We agree with the government's implicit concession, evidenced by its failure to cite or rely on *Toro-Romero*, that our assumptions in that case do not control our retroactivity decision in this case. Because the retroactivity issue in *Toro-Romero* was not presented for review, was not given reasoned consideration, and was unnecessary for the decision, it is not binding precedent. *See Barapind* v. *Eno-*

*moto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam); *see also United States* v. *Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (Kozinski, J., concurring) (defining dictum as an unnecessary statement in a published opinion that is not the result of "reasoned consideration").

### C. Simultaneous Application for Waiver of Deportation Under § 212(c) and Cancellation of Removal Under § 1229b(a)

The BIA appears to have believed that a waiver of deportation under § 212(c) would have eliminated Sinotes-Cruz's 1993 crime for purposes of the stop-time rule of part B of § 1229b(d)(1), thereby permitting him to accrue seven years of continuous presence under § 1229b(a)(2) and potentially making him eligible for cancellation of removal. The BIA held, based on § 1229b(c)(6), that Sinotes-Cruz could not apply simultaneously for both waiver of deportation under § 212(c) and cancellation of removal under § 1229b(a). We do not need to reach that question, given our holding that the permanent stop-time rule of part B of § 1229b(d)(1) does not apply retroactively to stop accrual of time under § 1229b(a)(2).

### Conclusion

We therefore grant the petition and remand to the BIA. We hold only that Sinotes-Cruz is removable, and that the permanent stop-time rule of part B of § 1229b(d)(1) does not apply retroactively to stop his accrual of seven years of continuous residence under § 1229b(a)(2). We do not otherwise determine Sinotes-Cruz's eligibility for cancellation of removal. We remand for further proceedings consistent with this opinion.

PETITION GRANTED; REMANDED.