**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| ABDURAHMAN OSMAN KEMI, | No. 10-71599 |
| Petitioner, | Agency No. A074-352-474 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 6, 2014[**]
Pasadena, California

Before: BYBEE, BEA, and IKUTA, Circuit Judges.

Abdurahman Osman Kemi, a native and citizen of Ethiopia, petitions for

review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from

an Immigration Judge's ("IJ") denial of his request for a continuance, as well as his

applications for suspension of deportation, asylum, withholding of deportation, and

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

"When the BIA conducts an independent review of the IJ's findings we review the BIA's decision and not that of the IJ. To the extent the BIA incorporates the IJ's decision as its own, we treat the IJ's statements of reasons as the BIA's and review the IJ's decision." *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006) (citation omitted).

"[W]e review *de novo* both purely legal questions and mixed questions of law and fact." *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012) (internal quotation marks and citation omitted). In contrast, factual determinations are reviewed for substantial evidence. *Id.* "Under the substantial evidence standard, a petitioner can obtain reversal only if the evidence compels a contrary conclusion." *Zarate v. Holder*, 671 F.3d 1132, 1134 (9th Cir. 2012).

Substantial evidence supports the BIA's finding that Kemi was "firmly resettled" in Germany under 8 C.F.R. § 1208.15. Kemi concedes that he was granted lawful permanent residency in Germany. The burden was therefore on Kemi to show that he falls within one of the regulatory exceptions, 8 C.F.R. § 1208.15(a) or (b). *Maharaj v. Gonzales*, 450 F.3d 961, 964 (9th Cir. 2006). He has not done so. The record establishes that Kemi lived in Germany for over nine

2

years, worked in Germany, married a German citizen, rented a residence in Germany, paid taxes, received unemployment benefits, and generally enjoyed the benefits available to other lawful residents of that country. As a result, Kemi is ineligible for asylum relief from Ethiopia. 8 U.S.C. § 1158(b)(2)(A)(vi).

Substantial evidence supports the BIA's conclusion that Kemi did not establish a clear probability of persecution or torture in Ethiopia on the basis of his Oromo ethnicity. The record supports the BIA's finding that Oromos are not targeted on the basis of their ethnicity alone, independent of their known or suspected political sympathies. Moreover, the record supports the BIA's finding that Kemi would not be targeted as a member of a disfavored group. Kemi testified: (1) he "do[es] not want to get involved in any politics"; (2) his fear of future persecution is based only on his Oromo ethnicity; (3) he has had no political involvement for more than three decades; (4) he has successfully resisted Oromo Liberation Front recruitment in the United States; and (5) though he speaks Amharic fluently, he "[b]arely" speaks Oromo. Therefore, Kemi has failed to show that the record compels reversal of the BIA's conclusion.

Substantial evidence supports the BIA's conclusion that the abuse Kemi suffered in Germany did not rise to the level of past persecution. *Lanza v. Ashcroft*, 389 F.3d 917, 934 (9th Cir. 2004) (cautioning that persecution "is an extreme

3

concept that does not include every sort of treatment our society regards as offensive" (internal quotation marks and citations omitted)). The abuse that Kemi suffered consisted mostly of racial slurs and bottle throwing. Such discrimination is reprehensible, but the standard for persecution is more demanding. Like the petitioner in *Nagoulko v. INS*, 333 F.3d 1012, 1014–16 (9th Cir. 2003), Kemi was verbally harassed, suffered relatively minor physical abuse, and struggled to find work; he did not face specific, violent threats like those received by the petitioner in *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119–20 (9th Cir. 2004). Accordingly, Kemi has failed to show that the record compels the conclusion that he suffered persecution in Germany.

Substantial evidence supports the BIA's conclusion that Kemi did not establish a clear probability of future persecution or torture in Germany on the basis of his race or foreign status. Although the Country Report acknowledges governmental and societal discrimination against minority groups, as well as physical harassment of foreigners and racial minorities, it also indicates that the German government has devoted significant resources to prevent discrimination against vulnerable groups and that German law provides substantial protection to racial and ethnic minorities. As a result, Kemi cannot show that the record compels reversal of the BIA's conclusion.

4

An IJ has discretionary authority to grant a motion for continuance at her own convenience, for good cause shown, or upon application by one of the parties. 8 C.F.R. §§ 1003.29, 1240.6. The BIA reviews de novo all matters of discretion, including whether to grant a motion for continuance. *Id*. § 1003.1(d)(3)(ii). We review the agency's denial of a continuance for abuse of discretion, considering on a case by case basis "(1) the importance of the evidence, (2) the unreasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008). The BIA did not abuse its discretion in affirming the IJ's denial of the continuance for three reasons. First, Kemi had more than two years to prepare all of his applications. Second, contrary to Kemi's assertions, his attorney's decision to focus on the application for suspension of deportation was tactical in nature, and Kemi is bound by his attorney's tactical decisions, even if they prove unwise. *Magallanes-Damian v. INS*, 783 F.2d 931, 934 (9th Cir. 1986). Third, the record does not suggest that Kemi was unprepared to present all of his applications at the 2008 merits hearing. *Matter of Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983) ("[A]n [IJ's] decision denying the motion for continuance will not be reversed unless the alien establishes that [the] denial caused him actual prejudice."). At that hearing, Kemi submitted more than fifty pages of evidence relating to conditions in

5

Ethiopia and Germany, presented detailed testimony about his experiences and fears regarding both countries, and had his brother testify in support of his claims of past persecution and fear of future harm.

**DENIED.**