# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JHONNALYN ROMERO PASCUA,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 08-71636

Agency No.
A038-445-596

JHONNALYN ROMERO PASCUA,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 08-72705

Agency No.
A038-445-596

OPINION

On Petitions for Review of Orders of the
Board of Immigration Appeals

Argued and Submitted
February 11, 2011—Pasadena, California

Filed March 23, 2011

Before: A. Wallace Tashima and Raymond C. Fisher,
Circuit Judges, and Mark L. Wolf, Chief District Judge.*

Opinion by Judge Tashima

---

*The Honorable Mark L. Wolf, Chief United States District Judge for
the District of Massachusetts, sitting by designation.

**COUNSEL**

Christy A. Chouteau, Aguirre Law Group, Healdsburg, California, for the petitioner.

Rebecca Ariel Hoffberg, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

---

**OPINION**

TASHIMA, Circuit Judge:

We consider whether former § 212(c) of the Immigration and Nationality Act ("INA") applies in deportation proceedings that commenced before the April 1, 1997, effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), even if the proceedings include deportation charges based on post-IIRIRA offenses. Following the Second and Fifth Circuits, we hold that former § 212(c) does apply in such circumstances.

I

Twice, Jhonnalyn Pascua, a lawful permanent resident since 1983, has been convicted of drug and weapons offenses in California. In 1995, she pleaded guilty to charges stemming from her simultaneous possession in a vehicle of a firearm and methamphetamine. In 2005, a jury convicted her of similar charges for possessing methamphetamine and ammunition in her home.

The Immigration and Naturalization Service ("INS") commenced deportation proceedings in 1996, alleging, based on the 1995 convictions, that Pascua was deportable for a firearms offense and a controlled substance offense under INA § 241(a)(2)(C) and § 241(a)(2)(B)(i), respectively. But, by the time Pascua was convicted of the 2005 crimes, her case was still before an Immigration Judge, so the Department of Homeland Security ("DHS," the successor to the INS) supple-

mented the deportation charges with additional charges based on the new firearms and drug convictions.[1]

IIRIRA became effective on April 1, 1997, after Pascua's deportation proceedings had commenced, but before her 2005 convictions and before the filing of supplemental charges based thereon. Among other things, IIRIRA repealed § 212(c) of the INA, which courts and the BIA had interpreted to authorize discretionary waivers of deportation for longtime lawful permanent residents, and replaced it with the more restrictive remedy of cancellation of removal under IIRIRA § 240A. As we observed in *Becker v. Gonzales*, 473 F.3d 1000 (9th Cir. 2007):

> [Section] 212(c) allowed a lawful permanent resident with seven years of consecutive residence in the United States to apply for a discretionary waiver of deportation. The IIRIRA, which became effective in April 1997, repealed § 212(c) and replaced it with § 240A. Under § 240A, the Attorney General may cancel removal of an alien who has been a lawful permanent resident for not less than five years, has resided continuously in the United States for seven years after having been admitted, and "has not been convicted of any aggravated felony."

*Id.* at 1003 (quoting IIRIRA § 240A(a), 8 U.S.C. § 1229b(a) (case citation omitted)).

Pascua concedes deportability, but seeks discretionary relief from deportation. The question is whether pre-IIRIRA law (i.e., § 212(c)), IIRIRA (*i.e.*, cancellation of removal

---

[1]The delay in the case resulted partly from a mistake by the Board of Immigration Appeals ("BIA") — it applied the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") retroactively to Pascua's case in a 1997 decision, which the federal district court reversed through habeas corpus relief — and partly from slow proceedings on remand.

under § 240A), or some combination of the two govern her eligibility for discretionary relief.

## II

We have jurisdiction pursuant to 8 U.S.C. § 1252 to review the legal issues raised in Pascua's petitions for review. *Garcia-Jimenez v. Gonzales*, 488 F.3d 1082, 1085 (9th Cir. 2007). We review such legal issues de novo. *Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010). Our review is "limited to the actual grounds relied upon by the BIA." *Id*. (quoting *Ramirez-Altamirano v. Holder*, 563 F.3d 800, 804 (9th Cir. 2009) (internal quotation marks omitted)).

## III

The government asks us not to decide whether IIRIRA applies to Pascua's case, but instead to remand this issue to the BIA. We will remand an issue to the BIA if it has not yet addressed it in the first instance. *Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007) ("[W]e are not permitted to decide a claim that the immigration court has not considered in the first instance."); *Andia v. Ashcroft*, 359 F.3d 1181, 1184-85 (9th Cir. 2004). Here, however, the BIA has twice considered the issue of IIRIRA's applicability, albeit in contradictory decisions. First, in a March 20, 2008, decision, the BIA concluded that pre-IIRIRA law governed the charges arising from Pascua's 1995 convictions, but that IIRIRA governed the charges arising from her 2005 convictions. Accordingly, relying on our decision in *Garcia-Jimenez*, the BIA reasoned that Pascua could not avoid deportation because she could not combine discretionary relief under pre-IIRIRA law (waiver of deportation pursuant to former § 212(c)) with discretionary relief under IIRIRA (cancellation of removal under § 240A). *See Garcia-Jimenez*, 488 F.3d at 1086 ("[A]n alien who has received § 212(c) relief — at any time — cannot also receive [cancellation of removal].").

Second, on reconsideration two months later, the BIA stated in a footnote that pre-IIRIRA law governed Pascua's entire case, even the post-IIRIRA charges, because her deportation proceedings commenced before IIRIRA. Despite this conclusion — which contravened the earlier decision and rendered *Garcia-Jimenez* inapplicable — the BIA concluded that Pascua could not avoid deportation under pre-IIRIRA law either, because the "statutory counterpart" rule, 8 C.F.R. § 1212.3(f)(5), made § 212(c) relief unavailable for her firearms convictions.

Because the BIA has twice considered whether IIRIRA applies to Pascua's case, we deny the government's request to remand this issue for the BIA to consider the issue yet again. We instead proceed to decide the issue. *See Retuta v. Holder*, 591 F.3d 1181, 1189 n.4 (9th Cir. 2010) ("Remand is not appropriate when the BIA addressed an issue . . . .").

IV

**[1]** We hold that former § 212(c) applies in deportation proceedings that were commenced before IIRIRA's effective date, even if the proceedings include charges based on post-IIRIRA convictions.[2] IIRIRA § 309(c) contains transitional rules that instruct courts not to apply IIRIRA in proceedings that began before the statute's effective date of April 1, 1997:

SEC. 309. EFFECTIVE DATES; TRANSITION

. . . .

---

[2]Section 212(c) relief remains available as a remedy from deportation, notwithstanding our decision in *Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc) (per curiam). Although portions of *Abebe* suggest that § 212(c) allows relief only from inadmissibility, *id.* at 1205, 1207, the decision does not undermine the validity of DHS regulations that extend the remedy to deportation. *Id.* at 1207. In *Gallegos-Vasquez v. Holder*, 2011 WL 692086, at *5, *8 (9th Cir. Mar. 01, 2011), we held, post-*Abebe*, that an alien in removal proceedings was eligible for § 212(c) relief.

> (c) TRANSITION FOR ALIENS IN PROCEEDINGS.—
>
> (1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III—A effective date—
>
>> (A) the amendments made by this subtitle shall not apply, and
>>
>> (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

IIRIRA § 309(c), Pub. L. No. 104-208, 110 Stat. 3009 (1996); *see also Mendiola-Sanchez v. Ashcroft*, 381 F.3d 937, 939 (9th Cir. 2004). As the statutory text indicates, there are some exceptions to its "General Rule" — for example, IIRIRA's provisions concerning "continuous residence or physical presence" apply even in pre-IIRIRA proceedings, *see* IIRIRA § 309(c)(5) — but no exception covers IIRIRA's repeal of former § 212(c). Therefore, under the plain meaning of the transitional rules, § 212(c) applies in proceedings, like Pascua's, that pre-date IIRIRA. *See Mendiola-Sanchez*, 381 F.3d at 939 ("Congress enacted transitional rules that instruct us to apply the pre-IIRIRA rules to cases that were pending when IIRIRA was enacted subject to limited exceptions.").

**[2]** There is one wrinkle. A DHS regulation, 8 C.F.R. § 1212.3(h), states that § 212(c) is only available for convictions that followed plea agreements reached before IIRIRA's effective date. 8 C.F.R. § 1212.3(h)(3) ("Section 212(c) relief is not available with respect to convictions arising from plea agreements made on or after April 1, 1997."); *see also id.* § 1212.3(h) ("Aliens are not eligible to apply for Section 212(c) relief . . . with respect to convictions entered after

trial."). Thus, whereas § 309(c) says that § 212(c) relief remains available so long as the immigration proceedings were commenced before IIRIRA's effective date, the DHS regulations state that § 212(c) relief is not available unless (1) the relevant conviction resulted from a plea agreement; and (2) the plea agreement was reached before the effective date. Pascua's case lays bare the apparent conflict: her proceedings began in 1996, so she satisfies the § 309(c) requirement; but her second set of convictions were in 2005, so she fails the § 1212.3(h) requirement.

**[3]** We have, as yet, not addressed the tension between § 309(c) and § 1212.3(h), but the Second and Fifth Circuits have. Both courts have held that § 309(c) trumps the regulation; or, put differently, that § 1212.3(h) does not restrict the availability of § 212(c) relief in proceedings that pre-date IIRIRA's effective date. *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 408-09 (5th Cir. 2010); *Garcia-Padron v. Holder*, 558 F.3d 196, 201-04 (2d Cir. 2009). Their reasoning is that § 1212.3(h), which the agency promulgated in response to the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), addresses post-IIRIRA proceedings exclusively:

> As is clear from the title of the rule [Certain Criminal Convictions Before April 1, 1997] and the decision in *St. Cyr*, § 1212.3(h) addresses the retroactivity problem created when a petitioner has pleaded guilty to a crime *prior* to IIRIRA's effective date of April 1, 1997, and has deportation proceedings instituted against him after that date. *See INS v. St. Cyr*, 533 U.S. at 293 (describing petitioner who pleaded guilty to selling controlled substance before 1996 amendments and whose removal proceedings were commenced after both AEDPA and IIRIRA became effective). *St. Cyr* was concerned only with the reliance interest of aliens who had pleaded guilty under the pre-AEDPA/IIRIRA regime. *See id.* at 323 ("Given the frequency with which [section] 212(c)

relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." (footnote omitted)). Consequently, § 1212.3(h) merely codifies the corollary rule that an alien who chose not to plead, but instead elected to go to trial under the pre-AEDPA/IIRIRA regime, was not entitled to assert the reliance interest identified in *St. Cyr*. Garcia-Padron's situation is the reverse of that present in *St. Cyr*: his deportation proceeding began under the pre-AEDPA/IIRIRA regime, and his subsequent conviction occurred under the post-AEDPA/IIRIRA regime. Because § 1212.3(h) was promulgated to deal with a retroactivity problem not present in this case, the regulation cannot supersede the plain language of IIRIRA section 309(c)(1), which preserves section 212(c) relief for petitioners, like Garcia-Padron, whose deportation proceedings began under the pre-IIRIRA regime.

*Garcia-Padron*, 558 F.3d at 202 (some citations omitted) (some alterations in original); *see also Enriquez-Guitierrez*, 612 F.3d at 408 ("[Section] 1212.3(h)(3) merely codifies the holding in *St. Cyr*, where the Supreme Court held that the repeal of § 212(c) could not be applied retroactively to aliens placed into removal proceedings *after* passage of IIRIRA, but who had pleaded guilty before the passage of IIRIRA.") (citing *Garcia-Padron*, 558 F.3d at 202).

**[4]** We find this analysis persuasive. Because § 1212.3(h) addresses a different problem than § 309(c), it does not undermine § 309(c)'s plain meaning: IIRIRA's repeal of § 212(c) does not apply in proceedings that pre-date IIRIRA. Therefore, because Pascua's proceedings pre-date IIRIRA, § 212(c) applies to her application for relief from deportation on all

charges, including those charges based on post-IIRIRA convictions.

For clarity, we explain the difference between this case and *Garcia-Jimenez*, which held that § 212(c) applied to the petitioner's pre-IIRIRA convictions but that IIRIRA § 240A (cancellation of removal) applied to his post-IIRIRA offense. 488 F.3d at 1084. The key consideration is whether the alien's proceedings pre-date IIRIRA. Garcia-Jimenez's deportation proceedings began in June 2000, after IIRIRA's effective date. *Id.* Therefore, § 1212.3(h), and not the transitional rules of § 309(c), governed the applicability of § 212(c) relief. The alien's pre-IIRIRA convictions satisfied § 1212.3(h), but the post-IIRIRA offense obviously did not. *Id.* ("The alien smuggling incident [the post-IIRIRA offense] . . . occurred after IIRIRA's enactment, so, to avoid removal based on that charge, Garcia-Jimenez had to seek cancellation of removal [under IIRIRA] . . . ."). Pascua's deportation proceedings, in contrast, pre-date IIRIRA. Therefore, the transitional rules of § 309(c), and not § 1212.3(h), govern, and § 212(c) applies to her entire case.

V

**[5]** Having decided that § 212(c) applies to Pascua's pre-IIRIRA and post-IIRIRA deportation charges, the remaining question is whether Pascua may actually avoid deportation. She is deportable for firearms offenses, INA § 241(a)(2)(C), and controlled substance offenses, INA § 241(a)(2)(B)(i). Under § 212(c), she is eligible for waivers of deportation on the controlled substance charges, but not on the firearms charges, which lack a corresponding ground of inadmissibility and therefore fail the agency's "statutory counterpart" test. *See* 8 C.F.R. § 1212.3(f)(5) ("An application for relief under former section 212(c) of the Act shall be denied if . . . [t]he alien is deportable . . . or removable . . . on a ground which does not have a statutory counterpart in section 212 of the Act

[governing inadmissibility].”); *Komarenko v. INS*, 35 F.3d 432, 434-35 (9th Cir. 1994).**³**

**[6]** But Pascua’s case does not end there. The BIA has long recognized a remedy known as “*Gabryelsky* relief” for lawful permanent residents like Pascua who are deportable for both firearms and drug offenses. *See In re Gabryelsky*, 20 I. & N. Dec. 750, 752-56 (B.I.A. 1993). *Gabryelsky* allows such aliens to overcome the statutory counterpart problem (posed by their firearms offenses) by combining an application for adjustment of status under INA § 245(a) with an application for § 212(c) relief. The adjustment of status application effectively converts the alien’s deportation proceedings into admissibility proceedings, where the firearms offenses (which do not bar admissibility) become irrelevant. *Id.* at 753; *see Malilia v. Holder*, 2011 WL 322383, at *4 (9th Cir. Feb. 03, 2011) (“Even an alien who is removable for a firearms conviction is eligible for adjustment of status if the alien presents an approved I-130 [petition].”).**⁴** The alien may then seek § 212(c) relief for the remaining drug offenses. *Gabryelsky*, 20 I. & N. at 753; *see also In re Azurin*, 23 I. & N. Dec. 695, 697 n.3 (B.I.A. 2005) (reaffirming *Gabryelsky* and stating that “a lawful permanent resident who [i]s deportable for both drug and weapons offenses c[an] concurrently apply for adjustment of status to overcome his weapons conviction and for section 212(c) relief to waive his drug conviction.”).

---

**³***Abebe* declared *Komarenko* a “dead letter,” yet *Abebe* left intact the statutory counterpart test for determining whether a potential deportee is eligible for § 212(c) relief, *Abebe*, 554 F.3d at 1207, and *Komarenko* applies that test to firearms offenses, 35 F.3d at 434-35. Therefore, despite the “dead letter” language, our citation to *Komarenko*’s application of the statutory counterpart test does not conflict with *Abebe*.

**⁴**“An adjustment of status is merely a procedural mechanism by which an alien already within the United States is assimilated to the position of one seeking to enter the United States.” *Medina-Morales v. Ashcroft*, 371 F.3d 520, 525 n.3 (9th Cir. 2004) (internal quotation marks and alterations omitted). The BIA holds that adjustment of status is available even to aliens who are already lawful permanent residents. *Gabryelsky*, 20 I. & N. at 757 n.2.

**[7]** The BIA has not addressed whether Pascua is eligible for *Gabryelsky* relief. It did not reach the issue in its March 20, 2008, decision because it concluded that *Garcia-Jimenez* completely barred relief. And, on reconsideration, although the BIA applied the statutory counterpart test, it neglected to consider *Gabryelsky*. Therefore, this issue, unlike the issues the BIA actually did consider, requires remand. *See Montes-Lopez*, 486 F.3d at 1165 ("[W]e are not permitted to decide a claim that the immigration court has not considered in the first instance."). We express no opinion on the viability of *Gabryelsky* relief in this case; rather, we simply remand for the agency's determination of whether Pascua qualifies for *Gabryelsky* relief in the first instance.

**GRANTED and REMANDED.**