**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EVA ISABEL GONZALEZ ROMO, Eva
AKA Eva Isabel Romo,

*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,

*Respondent.*

No. 16-71559

Agency No.
A047-334-955

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 8, 2019
Portland, Oregon

Filed August 14, 2019

Before: Ferdinand F. Fernandez, Susan P. Graber,
and John B. Owens, Circuit Judges.

Opinion by Judge Fernandez;
Concurrence by Judge Owens;
Dissent by Judge Graber

## SUMMARY*

### Immigration

Denying Eva Isabel Gonzalez Romo's petition for review of the Board of Immigration Appeals' precedential decision in *Matter of Gonzalez Romo*, 26 I. & N. Dec. 743 (BIA 2016), the panel held that Gonzalez was inadmissible under 8 U.S.C. §§ 1101(a)(13)(C)(v) and 1182(a)(2)(A)(i)(I), because her conviction for solicitation to possess marijuana for sale, in violation of Ariz. Rev. Stat. §§ 13-1002(A), 13-3405(A)(2), was a crime involving moral turpitude.

The panel gave *Chevron* deference to the BIA's determination that a returning lawful permanent resident who has a felony conviction for solicitation to possess marijuana for sale is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), even though that provision refers only to attempt and conspiracy to commit a crime involving moral turpitude, and not solicitation.

The panel noted that there was no doubt that Gonzalez was convicted in Arizona of the crime of solicitation to possess over four pounds of marijuana for sale, and that drug trafficking crimes are generally crimes involving moral turpitude. The panel further noted that this court held in *Barragan-Lopez v. Mukasey*, 508 F.3d 899 (9th Cir. 2007), that "solicitation to possess at least four pounds of marijuana for sale constitutes a crime involving moral turpitude." However, *Barragan-Lopez* involved 8 U.S.C.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1227(a)(2)(A)(i)(I), which applies to deportability determinations, and does not include the "attempt or conspiracy to commit such a crime" phrase that appears in § 1182(a)(2)(A)(i)(I), for inadmissibility purposes.

The panel rejected Gonzalez's contention that, by referencing only "attempt or conspiracy," § 1182(a)(2)(A)(i)(I) excluded crimes of solicitation. The panel stated that it saw no reason to deviate from the holding in *Barragan-Lopez* that solicitation of a crime of the magnitude of possession of at least four pounds of marijuana for sale is as turpitudinous as commission of the crime itself. The panel discussed the cases relied upon by Gonzalez, *Leyva-Licea v. I.N.S.*, 187 F.3d 1147 (9th Cir. 1999) (addressing drug trafficking aggravated felonies, 8 U.S.C. § 1101(a)(43)(B)) and *Coronado-Durazo v. I.N.S.*, 123 F.3d 1322 (9th Cir. 1997) (addressing controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i)), in which this court held that other statutes referencing only attempts and conspiracies did not cover solicitation offenses. While recognizing that reasoning which excludes solicitation as to certain provisions could be said to apply whenever conspiracy or attempt are specifically mentioned in a statute, the panel stated that would be unlikely when it comes to crimes involving moral turpitude, which are a separate concept with a long history that has been used by Congress in the immigration laws for over a century. The panel explained that it was doubtful that Congress intended to give the phrase different scope in different provisions, and this court's cases do not suggest that it did. The panel further explained that the legislative history indicated that Congress's inclusion of the terms attempt and conspiracy were meant to be clarifying, and that for inchoate crimes that are bad enough to be considered crimes of moral turpitude, there was little reason

to think that Congress eliminated some, such as solicitation, from consideration, simply because it decided to make it clear that others did fall into that category.

Because the panel concluded that Congress's intent was clear, it stopped at step one of the *Chevron* deference test. However, to the extent there was some perceived uncertainty regarding the meaning and reach of the statute, the panel concluded that it was clear that the BIA's resolution of the uncertainty was permissible and reasonable.

Concurring, Judge Owens wrote that he did not believe reliance on *Chevron* was necessary, but he concurred with the majority opinion because it comports with Supreme Court and Ninth Circuit law. Judge Owens continues to believe that the current moral turpitude jurisprudence makes no sense, and pointed out that he is not a lone wolf in so thinking.

Dissenting, Judge Graber wrote that the majority opinion misapplies both Ninth Circuit and Supreme Court precedent, and violates several canons of statutory construction. Judge Graber wrote that following this court's precedents, the text of § 1182(a)(2)(A)(i)(I) unambiguously covers only the generic crimes of "attempt or conspiracy," and that *Barragan-Lopez*, by its own terms, limited its holding to § 1227(a)(2)(A)(i)(I), which does not contain similar wording.

**COUNSEL**

Samuel L. Brenner (argued), Matthew L. McGinnis, and Courtney M. Cox, Ropes & Gray LLP, Boston, Massachusetts; Marta F. Belcher, Ropes & Gray LLP, East Palo Alto, California; for Petitioner.

Rebecca Hoffberg Phillips (argued), Trial Attorney; John S. Hogan, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

FERNANDEZ, Circuit Judge:

Eva Isabel Gonzalez Romo, a native and citizen of Mexico and a lawful permanent resident of the United States, petitions for review of the Board of Immigration Appeals' ("BIA") determination that she was inadmissible because she had been convicted of a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I);[1] *see also id.* § 1101(a)(13)(C)(v). The crime in question was solicitation to possess marijuana for sale, which she committed in the State of Arizona. *See* Ariz. Rev. Stat. §§ 13-1002(A), 13-3405(A)(2). We deny the petition.

Gonzalez had been a lawful permanent resident of the United States since November 18, 1999. On October 11, 2009, while driving with a suspended license, Gonzalez was

---

[1] Hereafter all statutory references are to Title 8 of the United States Code, unless otherwise indicated.

pulled over in Arizona for failing to make a complete stop at a red light. The police officer noticed two large cardboard boxes in Gonzalez's vehicle, and a strong odor of air freshener emanated from that vehicle. Upon securing Gonzalez's consent to search the vehicle, officers discovered 150 pounds of marijuana, which Gonzalez admitted that she had knowingly agreed to transport for $1,000. As a result, on March 12, 2010, she was convicted of felony solicitation to possess marijuana for sale under Arizona Revised Statutes sections 13-1002, 13-3405(A)(2) and sentenced to one-and-a-half years in prison.

After Gonzalez was released from prison, she traveled to Mexico. Upon returning from her trip on May 3, 2014, she was detained and paroled into the United States for removal proceedings. As relevant here, the government charged Gonzalez with inadmissibility due to her conviction of a crime involving moral turpitude.[2] *See* §§ 1101(a)(13)(C)(v), 1182(a)(2)(A)(i)(I). Gonzalez disputed that allegation. On September 29, 2015, the immigration judge found Gonzalez inadmissible as charged. In particular, the immigration judge held that solicitation to possess marijuana for sale is a crime involving moral turpitude. She appealed that determination to the BIA.

In a precedential decision, the BIA dismissed Gonzalez's appeal. The BIA concluded that even though Gonzalez was a lawful permanent resident, because she had been convicted

---

[2] "[A] crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards." *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (internal quotation marks omitted); *see also Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007).

of an offense identified in § 1182(a)(2)(A)(i)(I), she was seeking admission to the United States due to § 1101(a)(13)(C)(v). *Matter of Gonzalez Romo*, 26 I. & N. Dec. 743, 748 (BIA 2016). That is, the BIA concluded that Gonzalez's conviction was a crime involving moral turpitude. *Id.* It rejected Gonzalez's contention that, by referencing "attempt or conspiracy," § 1182(a)(2)(A)(i)(I) excludes crimes of solicitation even if they otherwise constitute crimes involving moral turpitude. *Id.* at 747–48. In doing so, the BIA receded from contrary language in a footnote in an earlier case,[3] which it now characterizes as dicta. *Matter of Gonzalez Romo*, 26 I. & N. Dec. at 748. Even in that earlier footnote, however, the BIA had not specifically said that it agreed with the Ninth Circuit's then-supposed position. This petition for review followed.

JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). "We review the BIA's determination of purely legal questions regarding the Immigration and Nationality Act de novo," with appropriate deference. *Kankamalage v. I.N.S.*, 335 F.3d 858, 861 (9th Cir. 2003).

---

[3] The footnote reads "In effect, the Ninth Circuit has indicated that [§ 1227(a)(2)(A)] is *broader* in its coverage of crimes involving moral turpitude than [§ 1182(a)(2)(A)(i)(I)], because it would include inchoate offenses, such as solicitation and facilitation, that are not specifically enumerated in [§ 1182(a)(2)(A)(i)(I)], which lists only attempts and conspiracies." *Matter of Vo*, 25 I. & N. Dec. 426, 429 n.4 (BIA 2011).

Where, as here, the BIA's decision is published, it may well be entitled to *Chevron*[4] deference. *See Chen v. Mukasey*, 524 F.3d 1028, 1031 (9th Cir. 2008); *Kankamalage*, 335 F.3d at 862. Under *Chevron*'s framework, the first step is to ascertain "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S. Ct. at 2781. To so determine, the court employs "traditional tools of statutory construction." *Id.* at 843 n.9, 104 S. Ct. at 2782 n.9. If the statute's meaning is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S. Ct. at 2781. Otherwise, we proceed to the second step, that is: "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S. Ct. at 2782. If it is, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the . . . agency." *Id.* at 844, 104 S. Ct. at 2782.

## DISCUSSION

The BIA determined that even though Gonzalez was a legal permanent resident, she was removable because she was inadmissible to the United States when she presented herself at the border. *See* §§ 1101(a)(13)(C)(v), 1182(a)(2)(A)(i)(I); *see also Matter of Gonzalez Romo*, 26 I. & N. Dec. at 748. Gonzalez argues that the BIA erred because she was not

---

[4] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S. Ct. 2778, 2781–82, 81 L. Ed. 2d 694 (1984).

subject to those provisions.**[5]** We disagree. As relevant here, pursuant to § 1101(a)(13)(C)(v), an alien who is a legal permanent resident is treated as one seeking admission if the alien "has committed an offense identified in section 1182(a)(2)." And pursuant to § 1182(a)(2)(A)(i)(I), as relevant here, an "alien convicted of . . . a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime . . . is inadmissible."

There can be no doubt that Gonzalez was convicted in Arizona of the crime of solicitation to possess over four pounds of marijuana for sale. *See* Ariz. Rev. Stat. §§ 13-1002(A), (B)(2), 13-3405(A)(2), B(6). Nor can there be any doubt that drug trafficking crimes are generally crimes involving moral turpitude. *See Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903–04 (9th Cir. 2007) (so stating and underscoring just how turpitudinous drug trafficking is); *see also Turijan v. Holder*, 744 F.3d 617, 621 (9th Cir. 2014); *Rohit v. Holder*, 670 F.3d 1085, 1088–89 (9th Cir. 2012). Moreover, we have specifically held that "solicitation to possess at least four pounds of marijuana for sale . . . constitutes a crime involving moral turpitude." *Barragan-Lopez*, 508 F.3d at 904; *see also Rohit*, 670 F.3d at 1089; *Atl. Richfield Co. v. Guerami*, 820 F.2d 280, 282 (9th Cir. 1987). In fact, *Barragan-Lopez*, 508 F.3d at 901, dealt with a conviction under Arizona statutory provisions which are the same as those involved here. All of that would lead inexorably to our denial of Gonzalez's petition were it not for

---

**[5]** We note that because her offense was committed in 2009, she is not entitled to the benefit of the rules that applied to legal permanent residents before the statutes were amended in 1996. *Cf. Vartelas v. Holder*, 566 U.S. 257, 261, 132 S. Ct. 1479, 1483–84, 182 L. Ed. 2d 473 (2012); *Centurion v. Sessions*, 860 F.3d 69, 77 (2d Cir. 2017).

the fact that *Barragan-Lopez* was construing § 1227(a)(2)(A)(i)(I) which states, in pertinent part, "[a]ny alien who . . . is convicted of a crime involving moral turpitude . . . is deportable." As Gonzalez points out, the language of § 1227(a)(2)(A)(i)(I), for deportation purposes, does not include the "attempt or conspiracy to commit such a crime" phrase that appears in § 1182(a)(2)(A)(i)(I), for inadmissibility purposes, and that, she argues, makes all the difference in the world. The argument has some purchase,[6] but like the BIA,[7] we are not convinced.

As *Barragan-Lopez* stated,[8] in neither of the cases that Gonzalez relies upon were we asked to consider the meaning and scope of the phrase "crime involving moral turpitude," and we certainly did not reflect upon whether solicitation to possess a large amount of marijuana for sale would be turpitudinous enough to come within the reach of that phrase.[9] Rather, in *Leyva-Licea*,[10] we asked whether a conviction in Arizona of solicitation to possess at least two pounds, but less than four pounds, of marijuana for sale was an aggravated felony. We determined that it was not because the definition of aggravated felony, as set forth in § 1101(a)(43)(B) (trafficking in controlled substances) in turn referred to 18 U.S.C. § 924(c), which in turn ultimately relied

---

[6] *See Leyva-Licea v. I.N.S.*, 187 F.3d 1147, 1150 (9th Cir. 1999); *Coronado-Durazo v. I.N.S.*, 123 F.3d 1322, 1325 (9th Cir. 1997).

[7] *Matter of Gonzalez Romo*, 26 I. & N. Dec. at 746–47.

[8] 508 F.3d at 904–05.

[9] *Id.*

[10] 187 F.3d at 1150.

upon 21 U.S.C. § 846, which covered only attempts or conspiracies.[11] Nothing therein treated solicitation as the kind of offense that would be an aggravated felony.[12] Moreover, in *Coronado-Durazo*,[13] we asked whether a conviction in Arizona of solicitation to possess cocaine was a controlled substance offense within the meaning of § 1227(a)(2)(B)(i).[14] We held it was not because that section covered only "'a violation [by an alien] of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance.'"[15] It did not by its terms indicate that the scope of the phrase "violation . . . relating to a controlled substance offense" included solicitation, or that solicitation was encompassed by an attempt or conspiracy. As we have since noted, had solicitation been included within the meaning of controlled substance offense, the result would have been the opposite. *See Mielewczyk v. Holder*, 575 F.3d 992, 997–98 (9th Cir. 2009). Again, in *Barragan-Lopez*,[16] we asked whether the scope of "crime involving moral turpitude" did include solicitation of that crime for amounts of marijuana over four pounds and said that it did because solicitation of a crime of that magnitude was as turpitudinous as commission

---

[11] *See id.*

[12] *Id.*

[13] 123 F.3d at 1324.

[14] This is the current section containing the provisions which at that time were contained in § 1251(a)(2)(B)(i).

[15] *Coronado-Durazo*, 123 F.3d at 1324; *see also id.* at 1325–26.

[16] 508 F.3d at 903.

of the crime itself.[17]  We did not opine on whether the result would be the same for "a very small quantity"[18] of the substance.   We agree with that analysis and see no compelling reason to deviate therefrom.  On the contrary, we see strong reasons not to do so.

First, we recognize that reasoning which excludes solicitation as to certain provisions could be said to apply whenever conspiracy or attempt are specifically mentioned in a statute.  However, that would be unlikely when it comes to crimes involving moral turpitude.  That is a separate concept with a long history[19] which has been used by Congress in the immigration laws for over a century.[20]  It is doubtful that Congress intended to give the phrase different scope in different provisions,[21] and our cases do not suggest that it did.[22]

---

[17] *See id.* at 904.

[18] *Id.*

[19] The concept is deeply rooted in our law.  *See Jordan v. De George*, 341 U.S. 223, 227, 71 S. Ct. 703, 705–06, 95 L. Ed. 886 (1951).

[20] *See id.* at 229–30, 71 S. Ct. at 707.

[21] *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86, 126 S. Ct. 1503, 1513, 164 L. Ed. 2d 179 (2006); *cf. Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232, 127 S. Ct. 2411, 2417, 168 L. Ed. 2d 112 (2007).

[22] *See, e.g.*, *Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1250–51 (9th Cir. 2019); *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1269 (9th Cir. 2013); *Morales v. Gonzales*, 478 F.3d 972, 978 (9th Cir. 2007), *abrogated on other grounds by Anaya-Ortiz v. Holder*, 594 F.3d 673, 677–78 (9th Cir. 2010).

Second, we recognize that solicitation is a type of inchoate crime because it would not be a crime involving moral turpitude if the underlying offense (here possession for sale of over four pounds of marijuana) was not a crime involving moral turpitude. *See Barragan-Lopez*, 508 F.3d at 903. No doubt attempt and conspiracy are also inchoate crimes in that sense. Why then would Congress mention them specifically and not mention other inchoate crimes (like solicitation) when referring to crimes involving moral turpitude? Of course, we cannot say for sure, and the legislative history, such as it is, does not make the answer perspicuous. It just indicates that the addition of those words was clarifying. *See* 139 Cong. Rec. 15,275 (1993) (indicating that the language was intended to "make clear" that those concepts were covered); *see also* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. 103–416, § 203, 108 Stat. 4305, 4311 (indicating that the language constitutes a clarification). However, when it comes to inchoate crimes that are bad enough to be considered crimes of moral turpitude, we see little reason to think that Congress took this somewhat indirect approach to eliminating some of them from consideration simply because it decided to make it clear that others did fall into that category. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226–27, 128 S. Ct. 831, 840, 169 L. Ed. 2d 680 (2008). It is more likely that Congress was focused on the two that it mentioned and had no intention of excluding all others. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385, 133 S. Ct. 1166, 1177, 185 L. Ed. 2d 242 (2013). And, while redundancy and surplusage are not always desirable, they are not anoetic. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992). In fact, it is not unusual to see redundancy occur in clarifying enactments, which do run the risk of introducing other problems while focusing on the task

of making sure that a particular problem does not arise.  *See id.*  As the Court has said: "In any event, our hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs.  It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render the entire provision a nullity."  *United States v. Atl. Research Corp.*, 551 U.S. 128, 137, 127 S. Ct. 2331, 2337, 168 L. Ed. 2d 28 (2007).  In the case at hand, the cost would be particularly high because it would create an anomaly in application of the statutory scheme, which we doubt Congress intended when it adopted its clarifying amendments.[23]  The anomaly can be seen if we start with the rather uncontroversial reflection that "[o]ur immigration law has generally treated aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable)."  *Servin-Espinoza v. Ashcroft*, 309 F.3d 1193, 1198 (9th Cir. 2002).  But removing solicitation of possession of over four pounds of marijuana from the definition of a crime involving moral turpitude in § 1182(a)(2)(A)(i)(I), although solicitation is part of the definition in § 1227(a)(2)(A)(i)(I), would turn that concept on its head.  That is because we already know that even a legal permanent resident can be removed pursuant to § 1227(a)(2)(A)(i)(I) for soliciting a crime involving moral turpitude.  *See Barragan-Lopez*, 508 F.3d at 905.  However, if solicitation is removed from the definition of crime involving moral turpitude in § 1182(a)(2)(A)(i)(I), no alien (legal permanent resident or not) can be excluded for soliciting a crime involving moral turpitude, regardless of

---

[23] In general, we do attempt to avoid anomalies and try to view the scheme at hand as "symmetrical and coherent."  *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1074 (9th Cir. 2016) (internal quotation marks omitted).

how turpitudinous that crime may be.  Again, we doubt that Congress intended any such thing.  In fact, in the context of this statutory scheme regarding who can enter and who can be removed, ascribing that intent to Congress would lead to a result so dubious that it would be nothing short of an internal inconsistency amounting to an absurdity.  *See United States v. Turkette*, 452 U.S. 576, 580, 101 S. Ct. 2524, 2527, 69 L. Ed. 2d 246 (1981) ("[A]bsurd results are to be avoided and internal inconsistencies in the statute must be dealt with."); *see also McNeill v. United States*, 563 U.S. 816, 822, 131 S. Ct. 2218, 2223, 180 L. Ed. 2d 35 (2011).

The discussion above indicates that we can stop at step one of the *Chevron* process[24] because Congress' true intent is clear to us.  However, to the extent that there is some perceived uncertainty[25] regarding the meaning and reach of the statute, that ambiguity[26] would direct us to step two.[27]  At that step, it is clear that the BIA's resolution of the

---

[24] 467 U.S. at 842–43, 104 S. Ct. at 2781.

[25] *See, e.g.*, *Mielewczyk*, 575 F.3d at 996–98; *Barragan-Lopez*, 508 F.3d at 902–05; *Coronado-Durazo*, 123 F.3d at 1324–26; *see also Mizrahi v. Gonzales*, 492 F.3d 156, 164–67 (2d Cir. 2007); *Peters v. Ashcroft*, 383 F.3d 302, 305–09 (5th Cir. 2004).

[26] We note that some ambiguity in statutory language does not preclude resolution of that ambiguity by the BIA.  *See Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782; *Perez-Guzman*, 835 F.3d at 1076 n.5.

[27] *Chevron*, 467 U.S. at 843–44, 104 S. Ct. at 2781–82.

uncertainty is permissible and reasonable. Indeed, it appears to us that it is the best resolution.[28]

Thus, we deny the petition.

## CONCLUSION

We hold that a conviction in Arizona for solicitation to possess at least four pounds of marijuana for sale constitutes a crime involving moral turpitude for purposes of § 1182(a)(2)(A)(i)(I), and, therefore, Gonzalez was inadmissible. *See* § 1101(a)(13)(C)(v).

Petition **DENIED**.

---

[28] We have not overlooked Gonzalez's argument that the BIA should be accorded less deference because it changed its position about what it thought our case law required. *See Matter of Vo*, 25 I. & N. Dec. at 429 n.4. However, as we see it, an agency's reflections on what it thought we have said, or might say, is quite different from a determination of what the law is. In any event: "In the circumstances of this case, where the agency's interpretation of a statute is at least as plausible as competing ones, there is little, if any, reason not to defer to its construction." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417, 113 S. Ct. 2151, 2161, 124 L. Ed. 2d 368 (1993).

OWENS, Circuit Judge, concurring:

Because the majority opinion comports with Supreme Court and Ninth Circuit law, I concur (and I do not think reliance on *Chevron* is necessary). But I continue to believe that the current moral turpitude jurisprudence makes no sense, and I am not a lone wolf in so thinking. *See Jordan v. De George*, 341 U.S. 223, 232–45 (1951) (Jackson, J., dissenting); *Barbosa v. Barr*, 926 F.3d 1053, 1060–61 (9th Cir. 2019) (Berzon, J., concurring); *Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1251–61 (9th Cir. 2019) (Fletcher, J., concurring); *Menendez v. Whitaker*, 908 F.3d 467, 475 (9th Cir. 2018) (Callahan, J., concurring); *Ortega-Lopez v. Lynch*, 834 F.3d 1015, 1018–19 (9th Cir. 2016) (Bea, J., concurring); *Arias v. Lynch*, 834 F.3d 823, 830–36 (7th Cir. 2016) (Posner, J., concurring); *Ceron v. Holder*, 747 F.3d 773, 785–89 (9th Cir. 2014) (en banc) (Bea, J., dissenting); *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1084–86 (9th Cir. 2007) (en banc) (Bea, J., dissenting), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc).

Until Congress or the Supreme Court intervenes, the present regime will continue to be a black hole for judicial resources. And the experience of our court leaves no doubt about the arbitrariness of the results. For example, we have held that knowing possession of child pornography is categorically a crime involving moral turpitude. *United States v. Santacruz*, 563 F.3d 894, 896–97 (9th Cir. 2009) (per curiam). But some conduct directly between the defendant and victim is not—such as committing a lewd or lascivious act on a child aged 14 or 15 (with a defendant at least ten years older than the child) with the intent of arousing, appealing to, or gratifying the lust, passions, or

sexual desires of the defendant or the child, *Menendez*, 908 F.3d at 472–74, or annoying or molesting a child under the age of 18, motivated by unnatural or abnormal sexual interest, *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 997–1007 (9th Cir. 2008), *overruled in part on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009) (en banc).

We have also been quick to conclude, under the current framework, that fraud crimes categorically involve moral turpitude, such as making false statements to obtain credit cards, *Tijani v. Holder*, 628 F.3d 1071, 1075–79 (9th Cir. 2010), but relatively more serious non-fraudulent crimes do not, such as simple kidnapping, *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212–18 (9th Cir. 2013). In addition, we have determined that beating up your wife is morally turpitudinous, *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993), *superseded by statute on other grounds as stated in Planes v. Holder*, 652 F.3d 991, 995 (9th Cir. 2011), but beating up your live-in girlfriend does not categorically involve moral turpitude, *Morales-Garcia v. Holder*, 567 F.3d 1058, 1067 (9th Cir. 2009).

Rather than play the role of a Rorschach psychologist, we should focus on a more objective standard, such as the length of the underlying criminal sentence, before removing someone from the United States. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 482–83 (9th Cir. 2015) (en banc) (Owens, J., concurring) ("A better mousetrap is long overdue. Rather than compete with Rube Goldberg, we instead should look to a more objective standard, such as the length of the underlying sentence . . . ."); *cf. United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) (Owens, J., concurring) ("A regime based on the length of previous sentences, rather

than on the vagaries of state law, is the way to go."). While not perfect, this approach would be far more evenhanded and predictable than what we have now.

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent. In my view, the majority opinion misapplies our own precedent and misapplies Supreme Court precedent as well. I would grant the petition.

Title 8 U.S.C. § 1182(a)(2)(A)(i)(I) renders inadmissible any alien convicted of "a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime." Here, Arizona's crime of possessing marijuana for sale is one that involves moral turpitude. The only question is whether "solicitation" to commit that crime also involves moral turpitude.

In *Coronado-Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir. 1997), we considered a similar question: whether 8 U.S.C. § 1227(a)(2)(B)(i), rendering removable any alien convicted of "a violation of (or a conspiracy or attempt to violate)" a law relating to controlled substances, covers "solicitation" to possess cocaine under Arizona law. We held: (1) solicitation is a generic offense under Arizona law, and (2) the plain text of § 1227(a)(2)(B)(i) does *not* cover solicitation because Congress chose to list only the generic crimes of conspiracy and attempt, but omitted the generic crime of solicitation. *Id.* at 1324–25.

In *Leyva-Licea v. INS*, 187 F.3d 1147, 1150 (9th Cir. 1999), we properly described our earlier holding in broad

terms about statutory construction:  "In *Coronado-Durazo*, we held that where a statute listed some generic offenses but omitted others, the statute covered only the generic offenses expressly listed."    Of course, that is a straightforward application of the common canon *expressio unius est exclusio alterius*.  *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that the canon applies "when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." (quoting *United States v. Vonn*, 535 U.S. 55. 65 (2002)).

*Barragan-Lopez v. Mukasey*, 508 F.3d 899 (9th Cir. 2007), does not detract from the forceful and plain statutory construction demanded by *Coronado-Durazo*.  As a three-judge panel, the *Barragan-Lopez* court could not overrule earlier precedent, and it carefully avoided doing so. *Barragan-Lopez* couched its holding in narrow terms:  an Arizona conviction for solicitation to possess marijuana for sale "constitutes a crime involving moral turpitude *for purposes of* 8 U.S.C. § 1227(a)(2)(A)(i)."  508 F.3d at 905 (emphasis added); *see also id.* at 904–05 (noting that *Coronado-Durazo* and *Leyva-Licea* did not address the specific question whether the crime involves moral turpitude "under 8 U.S.C. § 1227(a)(2)(A)(i)").    Section 1227(a)(2)(A)(i) provides, simply, that an alien who "is convicted of a crime involving moral turpitude committed within" a certain period of time after admission "is deportable" if a sentence of one year or longer could be imposed for that crime.  Unlike the statutes in *Coronado-Durazo*, *Leyva-Licea*, and here, § 1227(a)(2)(A)(i) does *not* refer to any generic crimes, and thus does not list attempt and conspiracy to the exclusion of solicitation; we distinguished

it from the earlier decisions on that ground. *Barragan-Lopez*, 508 F.3d at 904–05.

We have continued to recognize that *Coronado-Durazo* remains good law concerning basic statutory construction. For example, in *Mielewczyk v. Holder*, 575 F.3d 992, 997 (9th Cir. 2009), we noted that in *Coronado-Durazo* "the statute of conviction was a generic solicitation statute, and 8 U.S.C. § 1227(a)(2)(B)(i) limits convictions for generic crimes that may result in [removal] to conspiracy and attempt." (internal quotation marks omitted).

In short, following our precedents, the text of § 1182(a)(2)(A)(i)(I) unambiguously covers only the generic crimes of "attempt or conspiracy." Like the statute that we interpreted in *Coronado-Durazo*, this statute omits the term "solicitation." And we also held there that, in Arizona, solicitation is a generic offense. *Barragan-Lopez*, by its own terms, limited its holding to a different statute that did not contain similar wording. The majority opinion's interpretation sidesteps the holdings of *Coronado-Durazo* and *Leyva-Licea*.

In addition, the majority opinion violates several canons of statutory construction. (1) As the opinion acknowledges, its reading renders the phrase "or an attempt or conspiracy to commit such a crime" surplusage. Maj. op. at 13–14. Such a result is disfavored. *See Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 903 (9th Cir. 2012) ("It is 'a cardinal principle of statutory construction' that a statute should be construed, if possible, so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))). (2) Alternatively, the majority opinion *adds* "solicitation" to the statutory list,

again in violation of the venerable principle that we may not add words that Congress has omitted. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004). Congress obviously knew that solicitation is the third inchoate crime, because other provisions of the immigration statutes include it. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(U)(iii) (excluding from a definition certain victims of "criminal activity," which is defined to mean certain substantive crimes or an "attempt, conspiracy, or solicitation to commit" such a crime). (3) As noted above, *Coronado-Durazo* and *Leyva-Licea* applied the canon *expressio unius est exclusio alterius*, another principle abandoned by the majority opinion. (4) Finally, the majority opinion ignores the use of "or" in § 1182(a)(2)(A)(i)(I): by providing that an alien is inadmissible if she is convicted of "a crime involving moral turpitude . . . *or* an attempt or conspiracy to commit such a crime, Congress clearly signaled that it viewed those categories as *alternatives*. (Emphasis added.) The opinion, instead, transmogrifies alternatives into illustrations, as if the statute read "*including* an attempt or conspiracy." In *Garcia v. United States*, 469 U.S. 70, 73 (1984), the Supreme Court observed that "[c]anons of construction indicate that terms connected in the disjunctive in this manner [separated by "or"] be given separate meanings." *Cf. Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 99–100 (1941) (pointing out that the use of the term "including" means that a statutory provision's application is not "limited to the specific illustrations mentioned in the participial phrase introduced by 'including'").

Next, the majority incorrectly posits that the result of following the statutory construction principles of *Coronado-Durazo* and *Leyva-Licea* would be absurd because doing so would make the same crime a cause for *removal* but not

*inadmissibility*.  Maj. op. at 14–15.  That notion has surface appeal, but this result is actually common and not at all absurd.

Beginning with the big picture of the Immigration and Nationality Act, "removal" covers all matters that render an alien "inadmissible," *but also* an additional, longer list. Under 8 U.S.C. § 1227(a)(1)(A), "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is [removable]."  The statute continues, though, by making many other acts a cause for removal, including such disparate activities as alien-smuggling before, during, or *after* admission to the United States; failure to notify the Attorney General of a change of address; and violation of a protection order.  That is, removal is designed to cover more situations than inadmissibility.

The relevant statutes contain specific examples of this phenomenon.  For instance, "certain firearm offenses," such as unlawfully possessing or selling a firearm, render an alien "removable" under § 1227(a)(2)(C) but *not* "inadmissible." An alien who stands convicted of such an offense may, if otherwise eligible, seek adjustment of status, which "effectively converts the alien's [removal] proceedings into admissibility proceedings, where the firearms offenses (which do not bar admissibility) become irrelevant."  *Pascua v. Holder*, 641 F.3d 316, 322 (9th Cir. 2011); *see also Malilia v. Holder*, 632 F.3d 598, 604 (9th Cir. 2011) ("Even an alien who is removable for a firearms conviction is eligible for adjustment of status if the alien presents an approved I-130.").  Someone, like Petitioner here, who is a lawful permanent resident is entitled to apply for adjustment of status.  *Pascua*, 641 F.3d at 322 n.4.  Indeed, the very

existence of adjustment of status shows that Congress intends more stringent rules to apply to removability than to admissibility. *See, e.g.*, *Drax v. Reno*, 338 F.3d 98, 107, 113 (2d Cir. 2003) (discussing adjustment of status and "the inherent differences between [removal] and exclusion").

In an analogous context, we have held that Congress can have a rational reason to apply *different* rules to the *same* conduct for purposes of removability and inadmissibility. In *Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc) (per curiam), we overruled *Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981). *Tapia-Acuna* held that no rational basis existed "for granting additional immigration relief [under former INA § 212(c)] to aliens who temporarily leave the United States and try to reenter (i.e., aliens facing inadmissibility), and not to aliens who remain in the United States (i.e., aliens facing [removal])." *Abebe*, 554 F.3d at 1205 (citing *Tapia-Acuna*, 640 F.2d at 225). That is essentially the position that the majority opinion takes. But *Abebe* held that "Congress could have limited section 212(c) relief to aliens seeking to enter the country from abroad in order to create an incentive for [removable] aliens to leave the country," thus saving resources that the government "would otherwise devote to arresting and [removing] these aliens." *Id.* at 1206 (internal quotation marks omitted).

*Abebe*'s reasoning applies with equal force here. In addition, Congress rationally could conclude that "solicitation" is a less serious crime than "attempt" or "conspiracy" because it is further removed from the actual commission of the underlying crime involving moral turpitude. For example: If a person asks a friend if he's interested in producing child pornography, that conversation can constitute *solicitation*. If the friend agrees and one of

them commits an overt act (such as buying a camera) that makes the production of child pornography more likely, the person is guilty of *conspiracy*. And if the person already has a camera and lures a child into his home, or arranges to meet an undercover officer who poses as a child, the person *attempts* to produce child pornography. It is rational to consider solicitation the least serious of the inchoate offenses. *See Coronado-Durazo*, 123 F.3d at 1326 ("[W]e do not find it absurd, or inconsistent, that despite congressional zeal to eliminate illicit drug trafficking, Congress limited [removal] for generic crimes to conspiracy and attempt.").

Finally, the majority opinion purports to follow *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), maj. op. at 15–16, but *Chevron* counsels the opposite result. As the majority opinion correctly notes, at step one of the analysis, if the statute is clear, we stop because we must give effect to unambiguously expressed congressional intent. *Id.* at 842–43. But in applying step one, the majority opinion overlooks the requirement that we *first* must employ "traditional tools of statutory construction" when ascertaining congressional intent. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc) (quoting *Chevron*, 467 U.S. at 843 n.9). When we apply those traditional tools, as we did in *Coronado-Durazo* and *Leyva-Licea*, we must conclude that the relevant statute plainly excludes "solicitation."

Even if the statute were ambiguous, we would not owe the deference that the majority opinion affords, for two reasons. First, the BIA misread Ninth Circuit precedent. Like the majority opinion, the BIA cited cases, including *Barragan-Lopez* and *Rohit v. Holder*, 670 F.3d 1085 (9th Cir. 2012), which interpreted a different statute that does not

separate out inchoate offenses. Second, the BIA in a previous case, *In re Khanh Hoang Vo*, 25 I. & N. Dec. 426, 429 & n.4 (B.I.A. 2011), recognized that 8 U.S.C. § 1182(a)(2)(A)(i)(I) excludes solicitation. By 2011, all the Ninth Circuit cases relevant to this question had been decided. But in 2016 the BIA simply "withdr[e]w from" its holding in *Khanh Hoang Vo* because "this statement does not reflect our current understanding of the Ninth Circuit's approach." The BIA's cursory discussion is insufficient to meet the requirement that an agency "provide a reasoned explanation for the change" in position. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). The BIA's terse about-face is particularly suspect because it mischaracterizes a holding in *Khanh Hoang Vo* as dictum. When circumstances have not changed, the agency must specify why it disregards the circumstances that led to its earlier position. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). The BIA has failed to meet its obligation to justify a change in position. Were we to reach step two of the *Chevron* analysis, we still would not owe deference to the BIA.

For all the foregoing reasons, I dissent.